1  ANTHONY L. FRANÇOIS, No. 184100
   afrancois@pacificlegal.org
2  CHARLES T. YATES, No. 327704
   cyates@pacificlegal.org
3  Pacific Legal Foundation
   930 G Street
4  Sacramento, California 95814
   Telephone: (916) 419-7111
5  Facsimile: (916) 419-7747

6  Attorneys for Proposed Defendant-Intervenors
   Chantell and Michael Sackett
7

8                IN THE UNITED STATES DISTRICT COURT

9                FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

| 11 | WATERKEEPER ALLIANCE, INC, et al., | No. 3:18-cv-03521-RS |
|---|---|---|
| 12 | Plaintiffs, | **NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (FRCP 24)** |
| 13 | v. | |
| 14 | ANDREW R. WHEELER, as Administrator of the U.S. Environmental Protection Agency, et al., | |
| 15 | Defendants. | Date: February 25, 2021<br>Time: 1:30 p.m.<br>Place: San Francisco Courthouse<br>Courtroom 3 - 17th Floor<br>Judge: The Hon. Richard Seeborg<br>Action Filed: 6/13/2018 |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that on February 25, 2021, at 1:30 p.m., or as soon thereafter as
3  may be heard by this Court, Proposed Defendant-Intervenors Chantell and Michael Sackett ("the
4  Sacketts") move for leave to intervene in this action.

5  The Sacketts hereby move this Court for an order to intervene as defendants in this action
6  as a matter of right pursuant to Federal Rule of Civil Procedure 24(a). In the alternative, they
7  request leave to intervene by permission pursuant to Federal Rule of Civil Procedure 24(b).

8  Counsel for the Sacketts contacted the existing parties to determine their positions on this
9  motion and were informed that the Federal Defendants take no position on the Sacketts'
10  intervention, and that the Plaintiffs oppose the Sacketts' intervention.

11  The motion is based on this notice of motion and motion to intervene; the accompanying
12  memorandum of points and authorities; the declarations submitted with this motion; the documents
13  previously filed in this action; and any other material the Court may consider in the briefing and
14  oral argument of this matter.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES .................................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.   INTRODUCTION ........................................................................................................... 1

II.  APPLICANTS ................................................................................................................. 1

III. BACKGROUND ............................................................................................................. 3

    A.   The Clean Water Act and the Definition of "Navigable Waters" ............................ 3

    B.   This Lawsuit ............................................................................................................. 5

IV.  ARGUMENT ................................................................................................................... 6

    A.   The Sacketts Satisfy Rule 24(a) and
        Should Be Granted Intervention as of Right ............................................................ 6

        1.   The Sacketts' Motion to Intervene Is Timely ................................................... 7

        2.   The Sacketts' Interests Relate to the Subject of This Litigation ...................... 7

        3.   Disposition of This Case May Impair/Impede the Sacketts' Interests ............. 8

        4.   No Party Adequately Represents the Sacketts' Interests .................................. 9

    B.   In the Alternative, The Sacketts Satisfy
        the Standard for Permissive Intervention ............................................................... 12

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) ................................................................. 9-10

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
    152 F.3d 1184 (9th Cir. 1998) ................................................................................................ 12

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) ................................................................................................................ 10

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
    647 F.3d 893 (9th Cir. 2011) ........................................................................................... 7, 9-10

*Cty. of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) ................................................................. 8

*Employee Staffing Servs. v. Aubry*, 20 F.3d 1038 (9th Cir. 1994) ............................................... 13

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995) ............... 8-10, 12

*Georgia v. Wheeler*, No. 2:15-cv-00079, 2019 WL 3949922 (S.D. Ga. Aug. 21, 2019) ............... 4

*Greene v. United States*, 996 F.2d 973 (9th Cir. 1993) .................................................................. 7

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987) ....................... 3

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002) ..................................... 12-13

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) ................................ 7, 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................................... 8

*National Cable & Telecommunications Association v. Brand X Internet Services*,
    545 U.S. 967 (2005) ................................................................................................................ 10

*Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967) ............................................................................ 8

*Orange Cty. v. Air California*, 799 F.2d 535 (9th Cir. 1986) ...................................................... 12

*Rapanos v United States*, 547 U.S. 715 (2006) ..................................................................... 3-4, 11

*Sackett v. EPA*, 566 U.S. 120 (2012) .............................................................................................. 2

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) ................................................. 12

*Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*,
    921 F.2d 924 (9th Cir. 1990) .................................................................................................... 8

*SEC v. United States Realty & Improvement Co.*, 310 U.S. 434 (1940) ................................... 13

*Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993) ....................................................................... 8

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ................................... 7, 9

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) .................................................. 9

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) ............................................... 7

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ............................................. 7

*Wilderness Soc'y v. U.S. Forest Service*, 630 F.3d 1173 (9th Cir. 2011) ...................................... 7

**Statutes**

33 U.S.C. § 1251, *et seq.* ................................................................................................................ 3

33 U.S.C. §§ 1311(a), 1362(12) .................................................................................................. 3-4

33 U.S.C. § 1344 ............................................................................................................................ 3

**Regulations**

33 C.F.R. § 328.3 ........................................................................................................................ 1, 4

33 C.F.R. § 328.3(a)(4) .................................................................................................................. 5

33 C.F.R. § 328.3(a)(7) (1987) ....................................................................................................... 4

33 C.F.R. § 328.3(c) ....................................................................................................................... 4

33 C.F.R. § 328.3(c)(1) ............................................................................................................... 1, 2

33 C.F.R. § 328.3(c)(1)(i)–(iv) ....................................................................................................... 5

33 C.F.R. § 328.3(c)(1)(iv) ............................................................................................................. 5

40 C.F.R. § 120.2 ........................................................................................................................... 1

40 C.F.R. § 120.2(3)(i) ................................................................................................................... 1

**Court Rules**

Fed. R. Civ. P. 24 ....................................................................................................................... 1, 9

Fed. R. Civ. P. 24(a) ........................................................................................................... 1, 6, 7, 8

Fed. R. Civ. P. 24(a)(2) .................................................................................................................. 7

Fed. R. Civ. P. 24(b) ........................................................................................................... 1, 12-13

Fed. R. Civ. P. 24(b)(3) .................................................................................................... 13

**Miscellaneous**

80 Fed. Reg. 37,054 (June 29, 2015) ............................................................................ 4, 11

84 Fed. Reg. 56,626 (Oct. 22, 2019) ............................................................................. 4, 11

85 Fed. Reg. 22,250 (Apr. 21, 2020) .................................................................... 1, 5, 11-12

3B Moore, James Wm., et al., *Moore's Federal Practice* (2d ed. 1995) ........................... 12

Mandelker, Daniel R., *Practicable Alternatives for Wetlands Development Under the Clean Water Act*, 48 Envtl. L. Rep. News & Analysis 10894 (Oct. 2018) ................. 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 24, Chantell and Michael Sackett ("the Sacketts") move to intervene to protect their interests in this litigation.

Plaintiffs Waterkeeper Alliance, Inc., Humboldt Baykeeper, Lake Worth Waterkeeper, Missouri Confluence Waterkeeper, Monterrey Coastkeeper, Rio Grande Waterkeeper, Russian Riverkeeper, Snake River Waterkeeper, Inc., Sound Rivers, Inc., Upper Missouri Waterkeeper, Inc., Turtle Island Restoration Network, WildEarth Guardians, and Ecological Rights Foundation (collectively "Waterkeeper Alliance") have filed an amended complaint challenging the U.S. Environmental Protection Agency (EPA) and the U.S. Department of the Army's (Army) (together "the Agencies") adoption of a final rule called the Navigable Waters Protection Rule ("Navigable Waters Protection Rule" or "Rule"), defining "navigable waters" or "waters of the United States" under the Clean Water Act. *See* 85 Fed. Reg. 22,250 (Apr. 21, 2020); ECF No. 93 ¶¶ 9–13.

The Sacketts seek to intervene to defend the portion of the Rule which defines "adjacent wetlands." *See* 33 C.F.R. § 328.3(c)(1); 40 C.F.R. § 120.2(3)(i).[1] The Sacketts have an interest in the Clean Water Act's regulation of their private property that would be affected by this lawsuit and that interest is not adequately represented by the existing parties. Therefore, they are entitled to intervention as of right. Fed. R. Civ. P. 24(a). Alternatively, the Sacketts move for permissive intervention. Fed. R. Civ. P. 24(b).

## II. APPLICANTS

Chantell and Michael Sackett own a residential lot in Priest Lake, Idaho, that is the subject of an EPA jurisdictional determination and compliance order issued in 2008.[2] Declaration of Chantell Sackett ¶ 7–9, and Exhs. A & B. EPA asserted that it had Clean Water Act authority over

---

[1] Subsequent references to 33 C.F.R. § 328.3 and its subdivisions are, unless indicated otherwise, to the version published in the Federal Register on April 21, 2020, at 85 Fed. Reg. at 22,338–39, and the identical provisions at 40 C.F.R. § 120.2, published the same date at 85 Fed. Reg. at 22,340–41. 40 C.F.R. § 120.2(3)(i) corresponds to 33 C.F.R. § 328.3(c)(1).

[2] The compliance order was withdrawn on March 13, 2021, but the jurisdictional determination remains in force. *See* Declaration of Chantell Sackett ¶ 13.

the lot because it contained "adjacent wetlands" under the regulations then in effect. *Id*. EPA's administrative record of the jurisdictional determination establishes that the Sacketts' lot has no surface water connection to any other surface water and is separated from the closest surface water by an impermeable artificial barrier (a road with no culverts under it). *Id.* ¶¶ 3–4, 9, and Exhs. A & B.

The Sacketts' challenge to EPA's assertion of Clean Water Act authority over their lot was the subject of the Supreme Court of the United States' decision in *Sackett v. EPA*, 566 U.S. 120 (2012) (federal district courts have jurisdiction under the Administrative Procedure Act to review EPA compliance orders as final agency action). Following remand, the District of Idaho upheld EPA's assertion of regulatory authority, and EPA continues to maintain that the Sacketts' lot is regulable under the definition of "adjacent wetlands" in effect in 2008. Order, *Sackett v. EPA*, No. 2:08-cv-00185-EJL (D. Idaho Mar. 31, 2019), ECF No. 120. The Sacketts' appeal of that decision is currently pending in the Ninth Circuit, with oral arguments heard on November 19, 2020, and a mediation conference held on December 22, 2020. *See* Minute Order Re: Case Argued and Submitted, *Sackett v. EPA*, No. 19-35469 (9th Cir. Nov. 19, 2020), Dkt. No. 43; Order Setting Mediation Conference, *Sackett v. EPA*, No. 19-35469 (9th Cir. Dec. 3, 2020), Dkt. No. 46.

As a result of their ongoing legal dispute with EPA, the Sacketts have been unable to build a home on their residentially zoned vacant lot for the last thirteen years. Sackett Decl. ¶ 10 (explaining that as long as EPA claims authority over their property, the Sacketts will be unable to build a house because they cannot afford an Army permit and because EPA's administrative record indicates that an Army permit for homebuilding would not be issued).

However, under the Navigable Waters Protection Rule's revised definition of "adjacent wetlands," the Sacketts' property is excluded from agency authority under the Clean Water Act. *See* 33 C.F.R. § 328.3(c)(1); Sackett Decl. ¶ 15. The lot's lack of surface water connection to any other surface water and its separation from the closest surface water by an impermeable artificial barrier (an elevated road) preclude Clean Water Act regulation under the new Rule. *See* 33 C.F.R. § 328.3(c)(1).

Waterkeeper Alliance's challenge to the Rule, if successful, would reverse the Navigable

Waters Protection Rule's exclusion of the Sacketts' property from Clean Water Act regulation.

The Sacketts previously sought, and were denied, leave to intervene in a related challenge to the Navigable Waters Protection Rule pending before this Court. *See* Order Denying Motions to Intervene, *California v. Wheeler*, No. 3:20-cv-03005-RS (N.D. Cal. Aug. 13, 2020), ECF No. 200. The Sacketts' appeal of that order is currently pending before the Ninth Circuit. *See* Notice of Appeal, *California v. Wheeler*, No. 3:20-cv-03005-RS (N.D. Cal. Aug. 14, 2020), ECF No. 201; Appellants the Sacketts' Opening Brief, *California v. Wheeler*, No. 20-16606 (9th Cir. Nov. 23, 2020), Dkt. No. 10-1.

## III.   BACKGROUND

### A.   The Clean Water Act and the Definition of "Navigable Waters"

The Clean Water Act, 33 U.S.C. § 1251, *et seq.*, regulates discharges of "pollutants" from "point sources" to "navigable waters." 33 U.S.C. §§ 1311(a), 1362(12). The Act defines "navigable waters" as "waters of the United States, including the territorial seas." *Id.* § 1362(7). Although the Act defines "territorial seas," it does not otherwise define "waters of the United States." *Id.* § 1362(8).

Nonexempt discharges require a permit from either EPA or the Army, such as a "dredge and fill" permit under 33 U.S.C. § 1344. Obtaining a dredge and fill permit from the Army takes an average of more than two years and $250,000 in consulting costs. *See Rapanos v United States*, 547 U.S. 715, 721 (2006). Once obtained, a dredge and fill permit substantially limits how property encumbered by "navigable waters" can be used by its owner. *See generally* Daniel R. Mandelker, *Practicable Alternatives for Wetlands Development Under the Clean Water Act*, 48 Envtl. L. Rep. News & Analysis 10894 (Oct. 2018).

A person engaged in unpermitted, nonexempt discharges or permit violations faces citizen suits, administrative cease-and-desist and compliance orders, administrative penalties, civil actions for monetary penalties and injunctive relief, and criminal prosecution. *See generally Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 52–53 (1987). These severe burdens make it critically important that the regulated public know what is meant by "navigable waters."

///

There have been multiple attempts to define that term over the years. In 1986, the Army adopted an updated regulatory definition that stretched the term "navigable waters" to include all non-navigable wetlands "adjacent" (broadly defined as "bordering, contiguous, or neighboring") to regulated waters. *See* 33 C.F.R. § 328.3 (1987) (the 1986 Regulations); *id*. § 328.3(a)(7) & (c) (1987) (defining adjacent wetlands).

In 2006, a divided Supreme Court rejected this definition as exceeding the scope of the statutory term "navigable waters." *Rapanos*, 547 U.S. at 739. In assessing the legality of the 1986 Regulations, a four-Justice plurality determined that the language, structure, and purpose of the Clean Water Act restrict federal authority over non-navigable wetlands to only those that physically abut relatively permanent and continuously flowing waters, with an immediate surface water connection making the wetland and water body "indistinguishable." *Id.* at 755.

Justice Kennedy provided a fifth vote rejecting the 1986 Regulations defining "adjacent wetlands" as overbroad, joining the plurality in the judgment. But he proposed a broader interpretation of "navigable waters" than the plurality: the "significant nexus" test. *Id.* at 759 (Kennedy, J., concurring). Under this view, the government can regulate a non-abutting wetland if it significantly affects the physical, chemical, and biological integrity of a navigable-in-fact waterway. *Id.* at 779–80 (Kennedy, J., concurring). Justice Kennedy wrote that wetlands could be analyzed under this standard, either standing alone or in combination with features similarly situated within an otherwise undefined "region." *Id.* at 780 (Kennedy, J., concurring).

In 2015, after several years of effort to address *Rapanos*, EPA and the Army adopted new regulations redefining "navigable waters." 33 C.F.R. § 328.3 (2016); 80 Fed. Reg. 37,054 (June 29, 2015) (the 2015 Rule). Several lawsuits challenged the 2015 Rule. On August 21, 2019, the U.S. District Court for the Southern District of Georgia ruled on summary judgment that the 2015 Rule violated the Clean Water Act and permanently enjoined and remanded it without vacatur. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1382–83 (S.D. Ga. 2019). A short time later, partially in response to the decision in *Georgia v. Wheeler*, EPA and the Army published a regulation that repealed the 2015 Rule and readopted the 1986 Regulations. 84 Fed. Reg. 56,626 (Oct. 22, 2019) (the 2019 Repeal and Recodify Rule).

On April 21, 2020, EPA and the Army again redefined "navigable waters" by publishing the Navigable Waters Protection Rule. 85 Fed. Reg. 22,250 (Apr. 21, 2020). That Rule redefines "adjacent wetlands," 33 C.F.R. § 328.3(a)(4), as wetlands that abut or are flooded by other regulated waters, or are physically separated from such waters only by natural barriers or by permeable artificial barriers. 33 C.F.R. § 328.3(c)(1)(i)-(iv). On June 22, 2020, the Navigable Waters Protection Rule took effect in every state except Colorado.[3]

The Sacketts' interest in this lawsuit derives from EPA's claim, since 2008, that under the "adjacent wetlands" provision of the 1986 Regulations, it has authority over the Sacketts' Idaho property. Sackett Decl. ¶¶ 6–9, and Exhs. A & B. In contrast, under the Navigable Waters Protection Rule, the Sacketts' property is not federally regulated, because it is separated by an impermeable artificial barrier (an elevated road) from a tributary to Priest Lake. *Id.* ¶¶ 3–4, 9, and Exhs. A & B; 33 C.F.R. § 328.3(c)(1)(i)–(iv).[4] Their property has no surface water connection to any surface water that is subject to the Clean Water Act. Sackett Decl. ¶¶ 4, 9, and Exhs. A & B.

So, under the Navigable Waters Protection Rule, the Sacketts are finally able to build a home on their long-vacant lot without first obtaining permission from the Army.

**B.     This Lawsuit**

Waterkeeper Alliance initially filed this lawsuit On June 13, 2018, to partially challenge EPA and the Army's adoption of the 2015 Rule. *See* ECF No. 1. On May 27, 2020, following the repeal of the 2015 Rule by the 2019 Repeal and Recodify Rule, and the subsequent adoption of

---

[3] In a challenge to the Navigable Waters Protection Rule brought by the State of Colorado, the United States District Court for the District of Colorado enjoined the Agencies from implementing the Rule in Colorado. Order Granting As-Construed Motion for Stay of Agency Action, *Colorado v. EPA*, No. 1:20-cv-01461-WJM-NRN (D. Colo. June 19, 2020), ECF No. 61. The Sacketts have been granted intervention in that challenge. *See* Order Granting Motions to Intervene, *Colorado v. EPA*, No. 20-cv-1461-WJM-NRN (D. Colo. Jul. 15, 2020), ECF No. 69.

[4] "The term *adjacent wetlands* means wetlands that . . . [a]re physically separated from a water identified in paragraph (a)(1), (2), or (3) of this section only by an artificial dike, barrier, or similar artificial structure so long as that structure allows for a direct hydrologic surface connection between the wetlands and the water identified in paragraph (a)(1), (2), or (3) of this section in a typical year, such as through a culvert, flood or tide gate, pump, or similar artificial feature. An adjacent wetland is jurisdictional in its entirety when a road or similar artificial structure divides the wetland, as long as the structure allows for a direct hydrologic surface connection through or over that structure in a typical year." 33 C.F.R. § 328.3(c)(1)(iv).

the Navigable Waters Protection Rule, the parties stipulated to a stay of the parties' remaining summary judgment briefing on the 2015 Rule. *See* ECF Nos. 82–83. On December 22, 2020 Waterkeeper Alliance sought leave to file an amended complaint challenging the 2015 Rule, the 2019 Repeal and Recodify Rule, and the Navigable Waters Protection Rule. ECF No. 91. That request was granted the next day and Waterkeeper Alliance subsequently filed an amended complaint. *See* ECF Nos. 92–93.[5]

In its amended complaint, Waterkeeper Alliance alleges that the Navigable Waters Protection Rule is inconsistent with the text of the Clean Water Act, contravenes legal precedent, ignores the best available science, arbitrarily narrows the scope of federal regulatory authority, and was promulgated in a manner contrary to the requirements of the Administrative Procedure Act, National Environmental Policy Act, and Endangered Species Act. ECF No. 19 ¶¶ 9–16. Waterkeeper Alliance asks the Court to declare that the Navigable Waters Protection Rule is unlawful and vacate it in its entirety. *Id.* at 111.[6]

IV.   **ARGUMENT**

    A.   **The Sacketts Satisfy Rule 24(a) and Should Be Granted Intervention as of Right**

Under Federal Rule of Civil Procedure 24(a), an applicant for intervention has a right to intervene if

> (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

---

[5] Additional plaintiffs Lake Worth Waterkeeper, Missouri Confluence Waterkeeper, Rio Grande Waterkeeper, Sound Rivers, Inc., WildEarth Guardians, and Ecological Rights Foundation were added by the amended complaint. *See* ECF No. 93. Plaintiffs Center for Biological Diversity and Center for Food Safety were voluntarily dismissed by stipulation on November 12, 2020. *See* ECF No. 90.

[6] In addition to challenging the Navigable Waters Protection Rule, Waterkeeper Alliance's amended complaint challenges and seeks vacatur of the 2019 Repeal and Replace Rule, and partially challenges and seeks partial vacatur of the 2015 Rule. *See* ECF No. 93 at ¶ 13. The Sacketts seek intervention only as to the Navigable Waters Protection Rule, and only to defend the Rule's "adjacent wetlands" provisions.

1  *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (internal
2  citations omitted); Fed. R. Civ. P. 24(a)(2).

3        In applying this standard, Ninth Circuit courts "normally follow 'practical and equitable
4  considerations' and construe the Rule 'broadly in favor of proposed intervenors.'" *Wilderness Soc'y
5  v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (quoting *United States v. City
6  of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)); *Sw. Ctr. for Biological Diversity v. Berg*, 268
7  F.3d 810, 818 (9th Cir. 2001) ("In general, we construe Rule 24(a) liberally in favor of potential
8  intervenors") (internal citations omitted). This is because "'[a] liberal policy in favor of intervention
9  serves both efficient resolution of issues and broadened access to the Courts.'" *Id.* (quoting *City of
10 Los Angeles*, 288 F.3d at 397–98).

          **1.**    **The Sacketts' Motion to Intervene Is Timely**

12       Three factors inform whether a motion to intervene is timely: (1) the stage of the
13 proceedings; (2) prejudice to existing parties; and (3) the reason for any delay in moving to
14 intervene. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). The Sacketts
15 move to intervene within weeks of Waterkeeper Alliance filing an amended complaint implicating
16 the Sacketts' interests in the Navigable Waters Protection Rule. *See* ECF No. 93. As such, delay
17 is not an issue. *See Citizens for Balanced Use*, 647 F.3d at 897 (9th Cir. 2011) (noting that a motion
18 to intervene was timely when it was filed within three months of the filing of the complaint and
19 two weeks of the filing of an answer). The Agencies' answer is not due until February 21, 2020
20 and no substantive matters have been ruled on since the amended complaint was filed. *See* ECF
21 No. 91. Because intervention is sought so early, it will not prejudice any of the parties nor result
22 in significant disruption or delay. Consequently, the Sacketts' motion is timely.

          **2.**    **The Sacketts' Interests Relate to the Subject of This Litigation**

24       To intervene as of right, a party must have an "interest relating to the property or transaction
25 that is the subject of the action . . . ." Fed. R. Civ. P. 24(a)(2). This interest test is not a bright-line
26 rule but is instead met if applicants will "suffer a practical impairment of [their] interests as a result
27 of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir.
28 2006). Accordingly, a court should make a "practical, threshold inquiry," *Greene v. United States*,

996 F.2d 973, 976 (9th Cir. 1993), and "involv[e] as many apparently concerned persons as is compatible with efficiency and due process." *Cty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). The types of interests protected are interpreted "broadly, in favor of the applicants for intervention." *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) (quoting *Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924, 926 (9th Cir. 1990)).

The Sacketts have a significant interest in this litigation based on their ownership and use of private land which the Agencies have claimed since 2008 contains wetlands regulated under the Clean Water Act. As discussed above, the Sackett's own a residential lot in Priest Lake, Idaho, which, prior to the Agencies' adoption of the Navigable Waters Protection Rule, was found subject to federal permitting authority under the Clean Water Act. Sackett Decl. ¶¶ 7, 9. Should Waterkeeper Alliance prevail in this litigation, and the Defendants' 2020 redefinition of "adjacent wetlands" be set aside, the significant regulatory relief afforded the Sacketts by the Navigable Waters Protection Rule would be reversed. Sackett Decl. ¶ 17. Waterkeeper Alliance's challenge to the Rule, if successful, would reverse the Navigable Waters Protection Rule's exclusion of the Sacketts' property from Clean Water Act regulation. *Id.*

For these reasons, the Sacketts have significant protectable interests in this action as private landowners. *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995) ("[W]hen, as here, the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the 'interest' test of Fed. R. Civ. P. 24(a)(2); [it] has a significantly protectable interest that relates to the property or transaction that is the subject of the action."), *abrogated on other grounds*, *Wilderness Soc'y*, 630 F.3d 1173. Indeed, as the objects of the regulation at issue, their interests easily qualify them for intervention. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (noting that there is "ordinarily little question" of standing for the object of a regulation).

### 3. Disposition of This Case May Impair/Impede the Sacketts' Interests

Disposition of this case plainly threatens to impair and impede the Sacketts' interests. The threshold for demonstrating potential impairment of interests is low, as Rule 24(a)'s requirement

addresses whether, as a practical matter, a denial of intervention would impede a prospective intervenor's ability to protect its interests. *California ex rel. Lockyer*, 450 F.3d at 442 ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it.").

The interests identified above may be impaired or impeded if the Sacketts are denied intervention. As discussed, if Plaintiffs prevail and the Navigable Waters Protection Rule's definition of "adjacent wetlands" is vacated, it will alter the regulations that govern the Sacketts' use of their property, to their detriment. *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 ("We follow the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'") (quoting Fed. R. Civ. P. 24 advisory committee note to 1966 amendment).

### 4.   No Party Adequately Represents the Sacketts' Interests

The "burden in showing inadequate representation is minimal: it is sufficient to show that representation *may* be inadequate." *Forest Conservation Council*, 66 F.3d at 1498 (citations omitted) (emphasis in the original), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173; *see also Citizens for Balanced Use*, 647 F.3d at 898 (same); *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) ("[T]he burden of making that showing should be treated as minimal."). The Ninth Circuit examines three factors when evaluating adequacy of representation:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)).

The Sacketts amply meet their "minimal" burden in showing that EPA and the Army do not adequately represent their interests.[7] *See Arakaki*, 324 F.3d at 1086 ("The most important factor in

---

[7] Waterkeeper Alliance—which seeks vacatur of the Navigable Waters Protection Rule and thus reversal of its exclusion of the Sacketts' property from Clean Water Act authority—plainly does not represent the Sacketts' interests.

Mot. to Intervene & Mem. in Support
No. 3:18-cv-03521-RS                              9

1  determining the adequacy of representation is how the interest compares with the interests of
2  existing parties."). Although there is a rebuttable "assumption of adequacy when the government
3  is acting on behalf of a constituency that it represents," *see id.*, the Sacketts are not a "constituency
4  that [EPA] represents" but instead an adverse party to EPA in pending litigation about whether the
5  Clean Water Act applies to their property. *See* Sackett Decl. ¶ 12. The Sacketts satisfy each factor
6  of the Ninth Circuit analysis and easily overcome any assumption that EPA and the Army might
7  adequately represent their interests.

8  As to the first factor of the Ninth Circuit test, the federal government's interests as a
9  regulator are such that it will not "undoubtedly" make all of the Sacketts' arguments. *Citizens for*
10 *Balanced Use*, 647 F.3d at 898 (quoting *Arakaki,* 324 F.3d at 1086). The Agencies have a variety
11 of regulatory interests implicated by this case, including maximizing their power and discretion.
12 *See Forest Conservation Council*, 66 F.3d at 1499 (noting that the government is more focused on
13 "broad public interests") (collecting cases). That discretion includes the flexibility to later revise
14 the regulations so as to again include a wider portfolio of wetlands, including those alleged to exist
15 on the Sacketts' property. These interests in flexibility and discretion diverge significantly from the
16 Sacketts' direct interests as private landowners whose ability to develop, use, and enjoy their
17 residential property is protected by the challenged regulations but threatened by the prior and
18 possible future regulations.

19 Further, the Sacketts will defend the Rule's redefinition of "adjacent wetlands" on different
20 grounds than they expect the Agencies will. The Agencies have consistently taken the position that
21 the Navigable Waters Protection Rule's definition of "adjacent wetlands" is an allowable exercise
22 of agency discretion, entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources*
23 *Defense Council, Inc.*, 467 U.S. 837 (1984) and *National Cable & Telecommunications Association*
24 *v. Brand X Internet Services*, 545 U.S. 967 (2005).[8] By contrast, the Sacketts will argue that the

---

[8] *See* Appellants' Opening Brief at 26–35, *Colorado v. EPA*, No. 20-1238 (10th Cir. July 9, 2020), Doc. No. 010110374057 at 38–47 (arguing for *Chevron* deference); Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment at 12–17, *Conservation Law Found. v. EPA*, No. 1:20-cv-10820-DPW (D. Mass. Dec. 3, 2020), ECF No. 46 at 22–27 (same); Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment at 8–16,

Rule's new and narrower definition of "adjacent wetlands" is not a matter of agency discretion, but is *legally compelled* by Supreme Court precedent—namely, by the controlling plurality opinion in *Rapanos*, 54 U.S. 715. The Sacketts will argue that the Clean Water Act and Supreme Court precedent, properly understood, require the Agencies' new regulatory definition of "adjacent wetlands," rather than merely permitting it. But the Sacketts' position is one that the Agencies have expressly rejected. *See* 85 Fed. Reg. at 22,273 (rejecting the suggestion that the *Rapanos* plurality controls).

As to the second factor of the Ninth Circuit test, given the Agencies' institutional interests in preserving their judgment, power, and discretion, they are unlikely to be capable of making, or willing to make, all of the Sacketts' arguments. *See* 85 Fed. Reg. at 22,263. Indeed, the Agencies' inconsistency on the issues raised in this case creates serious doubts as to their ability to steadfastly advance the Sacketts' interests and arguments. In its redefinition of regulated wetlands, the challenged rule reverses earlier rules issued by the very same agencies. And these conflicting rules are of a very recent vintage. *See* 84 Fed. Reg. 56,626 (Oct. 22, 2019); 80 Fed. Reg. 37,054 (June 29, 2015). Given the vicissitudes of agency politics, there is considerable doubt that the Agencies will be capable of making, and willing to make, all of the Sacketts' arguments throughout the course of the litigation. Further, the Sacketts have been adverse parties to EPA in litigation for the past twelve years. Sackett Decl. ¶ 12. That litigation is presently pending in the Ninth Circuit. *See Sackett v. EPA*, No. 19-35469 (9th Cir.). Throughout the course of that litigation, EPA has argued for deference to its interpretations of "navigable waters" and "adjacent wetlands." United States Combined Memorandum at 10, 19, *Sackett v. EPA*, No. 2:08-cv-00185-EJL (D. Idaho Nov. 20, 2015), ECF No. 105-1 (arguing for deference to EPA interpretation of adjacent wetland regulations). In their defense of the Navigable Waters Protection Rule, the Agencies continue to argue for deference. *See supra* note 8. The Sacketts therefore seek intervention in this matter partially out of a concern that in defending the Rule on discretionary grounds, EPA is protecting its

---

*S.C. Coastal Conservation League v. Wheeler*, No. 2:20-cv-01687-DCN (D.S.C. Aug. 24, 2020), ECF No. 70-1 at 18–26 (same); Opposition to Plaintiffs' Motion for Preliminary Injunction at 20–26, *California v. Wheeler*, No. 3:20-cv-03005-RS (N.D. Cal. June 1, 2020), ECF No. 106 (same).

litigation position against the Sacketts that the prior regulations were also a valid exercise of discretionary agency decision-making.

Finally, as to the Ninth Circuit's third factor, the Sacketts offer necessary elements to the proceeding. In the context of inadequate representation by a government party, where an intervenor's interests are "potentially more narrow and parochial" than those "of the public at large," intervention is favored. *See Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998). The Sacketts' "narrow and parochial" goal is to defend their freedom to build a home on a 2/3-acre residential lot in Idaho. Sackett Decl. ¶ 16. The Agencies by contrast have a number of "broad[]" public interests in the Rule, including to "protect navigable waters from pollution while providing an implementable approach to determining regulatory jurisdiction under the CWA." 85 Fed. Reg. at 22,262. Indeed, as private landowners whose ability to develop, use, and enjoy their residential property is shaped by the challenged regulations, the Sacketts "offer[] a perspective which differs materially from that of the present parties to this litigation." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983); *see also Forest Conservation Council*, 66 F.3d at 1499 ("Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." (quoting 3B James Wm. Moore et al., *Moore's Federal Practice* ¶ 24.07[4] at 24–78 (2d ed. 1995))). The Sacketts therefore bring important and necessary elements to the litigation.

### B. In the Alternative, The Sacketts Satisfy the Standard for Permissive Intervention

If the Court denies the Sacketts' motion to intervene as of right, it should alternatively grant them permission to intervene pursuant to Rule 24(b). On timely motion, the court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact" as long as doing so will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b); *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002), *abrogated on other grounds*, *Wilderness Soc'y*, 630 F.3d 1173. Courts have broad discretion to grant intervention under the permissive standard, *see Orange Cty. v. Air California*, 799 F.2d 535, 539 (9th Cir. 1986), and Rule 24(b) "'plainly dispenses with any

requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation,'" *Employee Staffing Servs. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994) (quoting *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 459 (1940)). Indeed, "all that is necessary for permissive intervention is that [an] intervenor's 'claim or defense and the main action have a question of law or fact in common.'" *Kootenai Tribe of Idaho*, 313 F.3d at 1108 (citing Fed. R. Civ. P. 24(b)).

The Sacketts' defense of the challenged rule raises a question of law or fact in common with Waterkeeper Alliance's claims and the Agencies' defenses. For instance, the argument that Supreme Court precedent compels the Agencies' redefinition of regulated wetlands raises a question of law (the legality of the adjacent wetlands provisions of the Navigable Waters Protection Rule), which is also raised by Waterkeeper Alliance's complaint. *See* ECF No. 93 ¶¶ 248–56. And because the Sacketts have sought early intervention—within a month of Waterkeeper Alliance filing an amended complaint—their participation will not unduly prejudice any of the parties or result in significant disruption or delay. Fed. R. Civ. P. 24(b)(3).

Therefore, were the Court to conclude that the Sacketts lack a right to intervene, it should allow intervention permissively under Rule 24(b).

## CONCLUSION

The Sacketts should be granted intervention as of right or, in the alternative, should be granted permissive intervention.

DATED: January 19, 2021.

Respectfully submitted,

ANTHONY L. FRANÇOIS
CHARLES T. YATES

By _____/s/ Anthony L. François_____
        ANTHONY L. FRANÇOIS

Attorneys for Proposed Defendant-Intervenors