ANTHONY L. FRANÇOIS, No. 184100
Email: afrançois@pacificlegal.org
CHARLES T. YATES, No. 327704
Email: cyates@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Attorneys for Proposed Defendant-Intervenors
Chantell and Michael Sackett*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WATERKEEPER ALLIANCE, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREW R. WHEELER, as Administrator of the U.S. Environmental Protection Agency, et al.,<br><br>Defendants. | Case No. 3:18-cv-03521-RS<br><br>**REPLY OF PROPOSED DEFENDANT-INTERVENORS CHANTELL AND MICHAEL SACKETT IN SUPPORT OF MOTION TO INTERVENE**<br><br>Date:   February 25, 2021<br>Time:   1:30 p.m.<br>Place:  San Francisco Court<br>        Courtroom 3 – 17th floor<br>Judge:  The Hon. Richard Seeborg<br>Action Filed: 6/13/18 |

**INTRODUCTION**

Proposed Defendant-Intervenors Chantell and Michael Sackett (the Sacketts) reply as follows to the Opposition of Plaintiffs Waterkeeper Alliance, Inc., et al. (Waterkeeper), and respectfully request that the Court grant their motion to intervene.

The Sacketts meet the requirements for intervention of right under Federal Rule of Civil Procedure 24(a)(2). Waterkeeper concedes all elements of the Ninth Circuit test for intervention of right, except for one. ECF No. 100. By failing to argue otherwise, Waterkeeper concedes that the Sacketts' motion is timely, that they have significant interests in this litigation, and that disposition of this case plainly threatens to impair and impede these interests. *Id.* Waterkeeper only contends that Defendants the U.S. Environmental Protection Agency (EPA) and the U.S. Army (Army) (together, "the Agencies"), adequately represent the Sacketts' interests. Waterkeeper's arguments are unavailing.

Waterkeeper concedes that the Agencies have rejected the Sacketts' arguments for upholding the Navigable Waters Protection Rule (Rule). Waterkeeper argues that the Sacketts' proposed defense of the Rule is precluded, and that the Agencies' preferred defense of it is therefore adequate. But Waterkeeper's position is contradicted by Ninth Circuit authority, misconstrues the argument, and appears to require the Court to prematurely reach a conclusion on the merits. Failing to establish that the Sacketts' arguments are precluded, Waterkeeper presents little more than a handful of unavailing disagreements with the Sacketts' Motion to Intervene. Finally, Waterkeeper ignores that the Agencies are now in the process of revisiting the Rule and may soon reverse course on its defense. *See* ECF No. 99.

In opposing permissive intervention Waterkeeper baselessly asserts that the Sacketts' participation would prejudice the existing parties, and repeats its flawed arguments that the Sacketts' interests are adequately represented. With no evidence that the Sacketts' participation would prejudice the existing parties whatsoever, Waterkeeper provides no compelling reason why this Court should impose limitations on the Sacketts' participation.

///

///

# ARGUMENT

## I. EPA and the Army Will Not Adequately Represent the Sacketts' Interests and the Sacketts Are Entitled to Intervention as of Right Under Rule 24(a)

### A. The Sacketts and the Agencies Have Clearly Divergent Interests in the Outcome of This Litigation

The Sacketts' have met their "minimal" burden in showing that EPA and the Army do not adequately represent their interests. *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003). The Sacketts and the Agencies do not share an "identical interest" in the outcome of this litigation, such that an assumption of adequacy should apply. *See* ECF No. 100 at 3. The Sacketts are private landowners who seek intervention to defend their long-term interests in developing and enjoying their Idaho property. *See* ECF No. 95 at 7–9; ECF No. 95-1 (Sackett Decl.). The Agencies—if they seek to defend the Navigable Waters Protection Rule at all, *see* ECF No. 99—will seek an outcome upholding their ability to define and redefine "navigable waters" as an exercise of agency discretion. *See*, *e.g.*, Notice of Motion and Defendants' Opposition to Plaintiffs' Motion for Summary Judgment/Cross-Motion for Summary Judgment at 10–26, *California v. Wheeler*, No. 3:20-cv-03005-RS (Jan. 19, 2021), ECF No. 215 at 22–38 (arguing that the Rule should be upheld as an exercise of agency discretion under *Chevron* and *Brand X*). This legal position limits or eliminates any permanent regulatory relief the Sacketts may gain from the Rule. This clear divergence in interest is especially significant since the Agencies now appear poised to use their claimed discretion to once again reverse course on how they interpret the term "navigable waters." *See* ECF No. 99. Waterkeeper ignores this disparity between the Sacketts' and the Agencies' interests.

### B. The Sacketts Have Demonstrated That the Agencies Will Not Adequately Represent Their Interests Under the Three Ninth Circuit Factors[1]

Based upon the Sacketts' and the Agencies' clearly divergent objectives, no assumption of adequacy should apply. Even when applicable, this assumption and its requirements of a "compelling showing" stand only for the rule that a proposed intervenor must offer a nonspeculative

---

[1] Beyond briefly acknowledging them, *see* ECF No. 100 at 3, Waterkeeper does not systematically or explicitly discuss the three Ninth Circuit factors in their Opposition.

basis for inadequacy of representation that constitutes more than a difference in "litigation strategy." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 954 (9th Cir. 2009); *see also Prete v. Bradbury*, 438 F.3d 949, 957–59 (9th Cir. 2006) ("emphasiz[ing] that the burden of showing inadequacy of representation is generally minimal," even where an assumption of adequacy was applied, and a "compelling showing" of inadequacy required).

The Sacketts have met this "minimal burden" and have demonstrated conclusively under each Ninth Circuit factor that the Agencies will not adequately represent their interests.

### 1. EPA and the Army Will Neglect the Sacketts' *Chevron* Step One Argument for Upholding the Navigable Waters Protection Rule

Applying the first Ninth Circuit factor, the Agencies' interests as regulators in maintaining the broadest possible discretion to reinterpret a congressional grant of authority is such that they will not "undoubtedly make all of [the Sacketts'] arguments." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting *Arakaki,* 324 F.3d at 1086). Indeed, considering the change in presidential administration and recent Executive Order 13990, it is unclear whether the Agencies will defend the Rule at all. *See* ECF No. 99.

Waterkeeper concedes that EPA and the Army have explicitly rejected the Sacketts' position that the Clean Water Act compels the Agencies' interpretation of the statutory term "navigable waters," as it applies to "adjacent wetlands." ECF No. 100 at 4–5 (citing 85 Fed. Reg. at 22,252, 22,273, 22,314). But Waterkeeper turns the Ninth Circuit requirement on its head by arguing that the Agencies' confirmed rejection of the Sacketts' position somehow results in adequate representation of the Sacketts' interests. ECF No. 100 at 5. Waterkeeper's argument that the Sacketts' potential defense is not "meritorious" is contradicted by Ninth Circuit authority and misstates the argument. The Sacketts' argument that binding Supreme Court precedent and a plain reading of the Clean Water Act compel the Rule's redefinition of "adjacent wetlands," is not a prohibited "post-hoc rationale." *See* ECF No. 100 at 5 (citing *Motor Vehicle Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 50 (1983)). The Ninth Circuit holds that the general principle against post-hoc rationalizations set forth in *SEC v. Chenery Corp* is inapplicable where "the issue in dispute is the interpretation of a federal statute." *Railway Labor Execs.' Ass'n v.*

Reply ISO MTI
No. 3:18-cv-03521-RS

3

*Interstate Commerce Comm.*, 784 F.2d 959, 969 (9th Cir. 1986) (citing *U.S. Securities and Exchange Comm. v. Chenery Corp.,* 332 U.S. 194, 196 (1947) (*Chenery II*).[2]

The Agencies' power to regulate "adjacent wetlands" as "navigable waters" under the Clean Water Act is unquestionably a matter of statutory construction. *See Rapanos v. United States*, 547 U.S. 715, 740–42 (2006); *id.* at 759 (Kennedy, J., concurring). As such, in the Ninth Circuit *Chenery* does not apply to the Sacketts' argument that the adjacent wetlands definition in the Rule is compelled by the plain text of the Clean Water Act. *See Railway Labor Execs.'*, 784 F.2d at 969.[3] Waterkeeper fails to cite this Ninth Circuit precedent, let alone show why this Court should depart from it. *See* ECF No. 100 at 5. Thus, there are no grounds for Waterkeeper's assertion that the Sacketts have not raised a "meritorious" defense, or that this renders the Agencies' representation of their interests adequate. *See id.*

---

[2] Other Circuits follow the same rule. *See*, *e.g.*, *Koyo Seiko Co. v. United States*, 95 F.3d 1094, 1099–1102 (Fed. Cir. 1996) (affirming a proceeding on grounds other than those in the agency's record and finding *Chenery* inapplicable where the "the sole issue is one of statutory construction," the "plain language of the statute compels the conclusion," and the conclusion does not "implicate the exercise of agency discretion."); *Ark. AFL-CIO v. Fed. Commc'ns Comm'n*, 11 F.3d 1430, 1440 (8th Cir. 1993) (plurality opinion) (courts may find additional bases "for a correct legal result" beyond those offered by the agency; "the Supreme Court clearly limited *Chenery* to situations in which the agency failed to make a necessary determination of fact or of policy."); *N.C. Comm'n of Indian Affairs v. U.S. Dep't of Labor,* 725 F.2d 238, 240 (4th Cir. 1984), *cert. denied,* 469 U.S. 828 (1985) (no "*Chenery* problem . . . because the question of interpretation of a federal statute is not 'a determination or judgment which an administrative agency alone is authorized to make.'" (quoting *Chenery II*, 332 U.S. at 196); *cf. Chenery II*, 332 U.S. at 196 (*Chenery* only applicable when "dealing with a determination or judgment which an administrative agency alone is authorized to make. . . ."); *Social Sec. Bd. v. Nierotko,* 327 U.S. 358, 369 (1946) ("it is a 'judicial function," and not that of an agency, to decide the final "limits of its statutory power").

[3] Especially where the Agencies' interpretation of a statute is compelled, applying *Chenery* would be pointless. *See generally* Kevin M. Stack, *The Constitutional Foundations of* Chenery, 2017 Yale L.J. 952, 965–66; *id*. at 966 ("As Judge Friendly put it, '[W]hen agency action is statutorily compelled, it does not matter that the agency which reached the decision required by law did so on a debatable or even a wrong ground, for remand in such a case would be but a useless formality.'") (citing Henry J. Friendly, Chenery *Revisited: Reflections on the Reversal and Remand of Administrative Orders*, 1969 Duke L.J. 199, 210)); *cf. Morgan Stanley Capital Group, Inc. v. Public Utility Dist. No. 1.*, 554 U.S. 527, 544–45 (2008) (that agency "provided a different rationale for" a result compelled by Supreme Court precedent was "no cause for upsetting its ruling" because "[t]o remand would be an idle and useless formality. *Chenery* does not require that we convert judicial review of agency action into a ping-pong game." (quoting *Nat'l Labor Relations Bd. v. Wyman–Gordon Co.,* 394 U.S. 759, 766–767, n.6 (1969) (plurality opinion))).

Furthermore, by saying that the Sacketts' argument is not "meritorious," Waterkeeper appears to request a premature substantive ruling on the Sacketts' defense of the Rule. *See* ECF No. 100 at 5. That would be inappropriate at this stage of the proceedings. Waterkeeper cites no authority for the proposition that a Court should make an ultimate decision on the merits of an intervenor's proposed arguments before resolving the right to intervene in the first place. The best they point to is the passing phrase that a proposed intervenor "demonstrate a likelihood that the government will abandon or concede a *potentially meritorious* reading of the statute" in question. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006) (emphasis added); ECF No. 100 at 5 (citing *Lockyer*). This is precisely what the Sacketts have demonstrated. And nothing in *Lockyer* holds that a court must independently assess and rule on the merits of an intervenor's proposed arguments before granting intervention. Intervenors are routinely granted party status without ultimately prevailing on the merits in the Ninth Circuit. And Circuit precedent supports the Sacketts' position on *Chenery*, so the Sacketts' arguments are certainly *potentially meritorious*. *See Railway Labor Execs.'*, 784 F.2d at 969. If the Sacketts are granted intervention, they will fully brief their position on the merits at the appropriate time.

### 2. EPA and the Army Are Not "Capable and Willing" to Make the Sacketts' Arguments

Applying the second Ninth Circuit factor, the Agencies—as regulators concerned with maintaining their discretion to broadly interpret a congressional grant of authority—are not "capable and willing to make" the Sacketts' argument that the exclusion of non-abutting wetlands from the definition of "navigable waters" was compelled by the Clean Water Act. *Citizens for Balanced Use*, 647 F.3d at 898.

Waterkeeper soft sells the thirteen-year litigation history between EPA and the Sacketts (which is currently submitted after oral argument before the Ninth Circuit) by asserting that the Agencies and the Sacketts are "seeking the same limited interpretation" of the Clean Water Act. ECF No. 100 at 4 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)). Far from "seeking the same limited interpretation" of the Clean Water Act as the Sacketts, the Agencies have sought rulings (including from this Court) that the Rule's definition of "adjacent

wetlands" is an allowable exercise of agency discretion which they could reverse at any time under *Chevron* and *Brand X*. *See* ECF No. 95 at 16 n.8; Notice of Motion and Defendants' Opposition to Plaintiffs' Motion for Summary Judgment/Cross-Motion for Summary Judgment at 10–26, *Wheeler*, No. 3:20-cv-03005-RS, ECF No. 215 at 22–38. This expansive interpretation of the Clean Water Act would permit the Agencies the flexibility to later revise their regulations[4] to again include a wider portfolio of wetlands, including those alleged to exist on the Sacketts' property.

Waterkeeper misses the point when it argues that the Sacketts' ongoing litigation with EPA "cannot serve as their basis for intervention here." ECF No. 100 at 4. The Sacketts do not assert that their ongoing litigation is the "basis," for their right to intervene in this lawsuit. Instead, the Sacketts argue that their ongoing lawsuit against EPA—in which EPA has consistently asserted its discretion to regulate wetlands on the Sacketts' land—illustrates that the Agencies are *in*capable and *un*willing to make the Sacketts' statutory interpretation arguments. *See* ECF No. 95 at 17–18.

### 3. The Sacketts Offer Necessary Elements to the Proceeding That EPA and the Army Will Neglect

Finally, the Sacketts will "offer necessary elements to the proceeding that [the] other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki,* 324 F.3d at 1086). Most prominently, by advancing an argument which has been expressly "abandon[ed] or concede[d]" by the Agencies, the Sacketts bring a "point of view to the litigation not presented by either the plaintiffs or the defendants." *Lockyer*, 450 F.3d at 445. The Sacketts have, by definition, offered "necessary elements to the proceeding." Waterkeeper offers nothing to refute this beyond the flawed assertion that the Sacketts' arguments lack merit.

Further, any claim that the Sacketts' participation will not provide necessary elements is contradicted by the fact that—in cases involving government parties—the Ninth Circuit favors intervention where an intervenor's interests are "potentially more narrow and parochial" than those "of the public at large." *See Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998). The Sacketts have the "narrow and parochial" goal of defending their freedom to build a home on a 2/3-acre residential lot in Idaho without having to

---

[4] And it appears the Agencies are now in the early stages of doing so. *See* ECF No. 99.

1  first obtain a permit from the United States Army. ECF No. 95-1 ¶¶ 16, 20 (Sackett Decl.). It goes
2  without saying that this interest does not belong to the public at large. Waterkeeper's credulity-
3  straining evidence-free assertion that the Agencies were somehow "singl[ing] out the Sacketts for
4  special, positive treatment," and attempting to "help the Sacketts directly," does little to rebut this.
5  ECF No. 100 at 4. The assertion is based upon the Agencies' citations to general principles of law
6  contained in Supreme Court opinions[5] and is plainly contradicted by other materials in the
7  preamble. *See* 85 Fed. Reg. at 22,262 (asserting numerous public interests in the Rule, including to
8  "protect navigable waters from pollution while providing an implementable approach to
9  determining regulatory jurisdiction under the CWA"). If, after 13 years of preventing the Sacketts
10 from building a home on their lot, EPA developed some special solicitude for them, this is news to
11 the Sacketts, who remain locked in litigation with EPA over the scope of federal permitting
12 authority over their property, and who have witnessed the Agencies continue to promote legal
13 theories in defense of the Rule which are harmful to their property interests.

**II.     In the Alternative, the Sacketts Are Entitled To Permissive Intervention Under Rule 24(b)**

16  The Ninth Circuit considers a number of factors to determine whether permissive
17 intervention should be granted. *See Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329
18 (9th Cir. 1977) (setting forth a non-exhaustive list of seven factors to guide the district court's
19 discretion)). These factors pose no barrier to the Court exercising its "broad" discretion to permit
20 the Sacketts' intervention.
21  First, as discussed above, EPA and the Army will not adequately represent the Sacketts'
22 interests, and Waterkeeper has failed to adequately argue otherwise. *See supra* pp. 2–7.
23 ///
24 ///

---

[5] EPA and the Army cite *Sackett v EPA* twice in the 89 pages of text accompanying the final rule: once with a "*see*" signal and once with a "*see also*" signal. *See* 85 Fed. Reg. 22,257, 22,270. In both instances, the citation is included as part of a broader survey of Supreme Court precedent containing principles of law pertinent to Clean Water Act regulation. *See* 85 Fed. Reg. 22,257. The fact that the Sacketts are still fighting the EPA in federal court eight years after the Supreme Court affirmed their right to do so hardly leaves them feeling "singled out for special, positive treatment."

Second, in arguing that the Sacketts' proposed arguments do not relate to the merits of the case, Waterkeeper simply repeats the mistaken assertion—contradicted by Circuit authority—that the Sacketts' argument for upholding the Rule cannot be considered by this Court. *See* ECF No. 100 at 6.

Third the Sacketts' intervention poses no "delay" at all, let alone the sort of delay that might outweigh the substantial risk of inadequate representation. The Sacketts moved to intervene within a month of Waterkeeper filing its Amended Complaint and well before the Agencies' responsive pleading is due. And again, by arguing that the Sacketts' arguments "cannot succeed," Waterkeeper appears to be requesting this Court to prematurely rule on the merits of those arguments.

Finally, as to the fourth factor cited by Waterkeeper: "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit." *Spangler*, 552 F.2d at 1329. The non-exhaustive list of seven factors set forth in *Spangler* is merely intended to guide the Court's discretion. *Id*. In only discussing four factors, Waterkeeper concedes that not all factors always apply. Factual development of the evidentiary record is not relevant in agency record review cases, such as this one, where *no party* will expand the evidence beyond that contained in the Agencies' administrative record. By arguing that the fourth factor counsels against permissive intervention, Waterkeeper implicitly argues that intervention is disfavored in APA record review cases. No such rule exists.

### III.   Page Limits Are Not Appropriate

The standard page limits should be available to each party to this case. Waterkeeper writes vaguely of the "burden" the Sacketts' participation will place on the other parties to this litigation. ECF No. 100 at 6–7. Yet it does not identify any ways in which the Sacketts' timely intervention will burden the existing parties to this APA record review case. Waterkeeper certainly does not set forth any facts to justify such a radically diminished page count—less than half of the pages permitted by the local rules.

Finally, should additional parties seek intervention, this Court should make an assessment at that time as to whether consolidated briefing would be appropriate. Such a decision must be made

based on a variety of factors that cannot be known now—such as the arguments sought to be raised by the as-yet hypothetical intervenors, and how their interests relate to the Sacketts' interests.

## CONCLUSION

The Sacketts should be granted intervention as of right or, in the alternative, should be granted permissive intervention.

DATED: February 9, 2021.

Respectfully submitted,

ANTHONY L. FRANÇOIS
CHARLES T. YATES
Pacific Legal Foundation


By   /s/ Anthony L. François
     ANTHONY L. FRANÇOIS

*Attorneys for Proposed Defendant-Intervenors Chantell and Michael Sackett*