HUBERT T. LEE (NY Bar #4992145)
SONYA J. SHEA (CA Bar #305917)
U.S. Department of Justice
150 M Street, NE Suite 4.1116
Washington, D. C. 20002
Hubert.lee@usdoj.gov; sonya.shea@usdoj.gov
Telephone (202) 514-1806 (Lee)
Telephone (303) 844-7231 (Shea)
Facsimile (202) 514-8865

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WATERKEEPER ALLIANCE, INC.; HUMBOLDT BAYKEEPER, a program of Northcoast Environmental Center; LAKE WORTH WATERKEEPER; MISSOURI CONFLUENCE WATERKEEPER; MONTERREY COASTKEEPER, a program of The Otter Project, Inc.; RIO GRANDE WATERKEEPER, a program of WildEarth Guardians; RUSSIAN RIVERKEEPER; SNAKE RIVER WATERKEEPER, INC.; SOUND RIVERS, INC.; UPPER MISSOURI WATERKEEPER, INC.; TURTLE ISLAND RESTORATION NETWORK; WILDEARTH GUARDIANS; ECOLOGICAL RIGHTS FOUNDATION,

Plaintiffs,

v.

MICHAEL REGAN, in his official capacity as Administrator of the U.S. Environmental Protection Agency; U.S. ENVIRONMENTAL PROTECTION AGENCY; JAIME PINKHAM, in his official capacity as Acting Assistant Secretary of the Army for Civil Works; and U.S. ARMY CORPS OF ENGINEERS,

Defendants.

Civil Case No. 18-cv-3521-RS

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR**

Date: July 29, 2021
Time: 1:30 pm
Dept: San Francisco Courthouse, Courtroom 3 – 17th Floor
Judge: Honorable Richard Seeborg

Action Filed: June 13, 2018
Amended Complaint Filed: Dec. 23, 2020

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR ..... 5

MEMORANDUM OF POINTS AND AUTHORITIES ..... 5

BACKGROUND ..... 6

I. Statutory and Regulatory Overview ..... 6

II. The NWPR ..... 7

III. This Litigation ..... 8

IV. The Agencies' Review of the NWPR and Decision to Initiate New Rulemaking ..... 10

STANDARD OF REVIEW ..... 11

ARGUMENT ..... 12

I. The Agencies Have Legitimate and Good Faith Grounds for Seeking Voluntary Remand. ..... 12

II. Granting Remand Conserves Judicial Resources. ..... 14

III. Remand Would Not Prejudice the Parties. ..... 15

CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Cases**

*Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
988 F.2d 146 (D.C.Cir.1993) ........ 12

*Am. Forest Res. Council v. Ashe*,
946 F. Supp. 2d 1 (D.D.C. 2013) ........ 12

*Am. Petroleum Inst. v. EPA*,
683 F.3d 382 (D.C. Cir. 2012) ........ 11

*B.J. Alan Co. v. ICC*,
897 F.2d 561 (D.C. Cir. 1990) ........ 12

*Cal. Cmtys. Against Toxics v. EPA*,
688 F.3d 989 (9th Cir. 2012)........ 9, 10, 11, 12

*Commonwealth of Pennsylvania v. ICC*,
590 F.2d 1187 (D.C. Cir. 1978) ........ 12

*Ethyl Corp. v. Browner,*
989 F.2d 522 (D.C. Cir. 1993) ........ 12

*FBME Bank Ltd. v. Lew*,
142 F. Supp. 3d 70 (D.D.C. 2015) ........ 9, 11, 13

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ........ 8, 11

*Limnia, Inc. v. Dep't of Energy*,
857 F.3d 379 (D.C. Cir. 2017) ........ 9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*,
463 U.S. 29 (1983) ........ 8

*Nat'l Ass'n of Home Builders v. EPA*,
682 F.3d 1032 (D.C. Cir. 2012) ........ 11

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
545 U.S. 967 (2005) ........ 8

*Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*,
275 F. Supp. 2d 1136 (C.D. Cal. 2002)........ 9, 12

*Neighbors Against Bison Slaughter v. Nat'l Park Serv.*, No. CV 19-128-BLG-SPW, 2021 WL 717094 (D. Mont. Feb. 5, 2021) .......... 9

*Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21 (D.C. Cir. 1984) .......... 11

*Rapanos v. United States*, 547 U.S. 715 (2006) .......... 5

*SKF USA, Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001) .......... 9, 10, 11

*Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159 (2001) .......... 5

*Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084 (10th Cir. 1980) .......... 9

*United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, No. C-09-4029 EMC, 2011 WL 3607790 (N.D. Cal. Aug. 16, 2011) .......... 9

*United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985) .......... 5

*Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414 (D.C. Cir. 2018) .......... 11

*Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43 (D.C. Cir. 1999) .......... 11

**Statutes**

33 U.S.C. §§ 1251–1388 .......... 4

33 U.S.C. § 1311(a) .......... 4

33 U.S.C. § 1362(7) .......... 4, 7

**Code of Federal Regulations**

33 C.F.R. § 328.3 .......... 5

33 C.F.R. § 328.3(a) (1987) .......... 5

40 C.F.R. § 120.2 .......... 5

40 C.F.R. § 232.2(q) (1988) .......... 5

**Federal Registers**

39 Fed. Reg. 12,115 (Apr. 3, 1974) .......... 4
42 Fed. Reg. 37,122 (July 19, 1977) .......... 5
80 Fed. Reg. 37,054 (June 29, 2015) .......... 3, 5
84 Fed. Reg. 56,626 (Oct. 22, 2019) .......... 3, 5
85 Fed. Reg. 22,250 (Apr. 21, 2020) .......... 3, 5, 6
86 Fed. Reg. 7037 (Jan. 25, 2021) .......... 7, 8

**Executive Order**

Executive Order No. 13990 .......... 8

**NOTICE OF MOTION AND MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR**

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on July 29, 2021, at 1:30 pm, or soon as it may be heard, Defendants United States Environmental Protection Agency ("EPA"), EPA Administrator Michael Regan, United States Army Corps of Engineers ("Corps"), and Acting Assistant Secretary of the Army for Civil Works Jaime Pinkham ("Defendants" or "Agencies")[1] will, and hereby do, respectfully move the Court to remand without vacatur the Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020) (the "NWPR") to the Agencies and to dismiss Plaintiffs'[2] claims with respect to the NWPR.[3] This motion is being made pursuant to Local Rules 7-1 and 7-2 and before the Honorable Judge Richard Seeborg, San Francisco Courthouse, Courtroom 3 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Local Rule 7-4, the Agencies hereby offer the following memorandum of points and authorities in support of their motion to remand the NWPR to the Agencies and to dismiss Plaintiffs' claims with respect to the NWPR. As explained more fully herein, remand is appropriate because the

---

[1] EPA Administrator Michael Regan is automatically substituted for Andrew Wheeler, and Jaime Pinkham is automatically substituted for R.D. James pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Plaintiffs consist of the following organizations: Waterkeeper Alliance, Inc., Humboldt Baykeeper, Russian Riverkeeper, Monterrey Coastkeeper, Snake River Waterkeeper, Inc., Upper Missouri Riverkeeper, Inc., Turtle Island Restoration Network, Lake Worth Waterkeeper, Missouri Confluence Waterkeeper, Rio Grande Waterkeeper, Sound Rivers, Inc., WildEarth Guardians, Ecological Rights Foundation. On November 12, 2020, Center for Biological Diversity and Center for Food Safety were dismissed as plaintiffs in this proceeding. ECF No. 90.

[3] In addition to claims against the NWPR, Plaintiffs are also challenging two prior rules defining "waters of the United States" under the Clean Water Act. *See* ECF No. 93 (Plaintiffs' amended complaint) at pp. 97-110, Seventh to Twenty First Claims for Relief (Challenging the "Clean Water Rule: Definition of 'waters of the United States,'" 80 Fed. Reg. 37,054 (June 29, 2015) ("2015 Rule"), and the "'Definition of 'Waters of the United States' – Recodification of Pre-Existing Rules," 84 Fed. Reg. 56,626 (Oct. 22, 2019) ("Repeal Rule")). This motion's request for dismissal is limited to Plaintiffs' claims against the NWPR only. ECF No. 93 at pp. 91-96 (First through Sixth Claims for Relief).

Agencies have completed their review of the NWPR and have decided to commence a new rulemaking to revise or replace the rule. A remand would avoid potentially unnecessary litigation in this Court over aspects of the NWPR that will be reconsidered in a new rulemaking, would conserve the parties' limited resources, and would best serve the interest of judicial economy. In addition, remand would avoid requiring the Agencies to take positions on merits questions that might appear to pre-judge issues that will be reconsidered through notice-and-comment rulemaking. Through the Agencies' administrative rulemaking process, all members of the public, including the parties to this case, will have the opportunity to submit comments and recommendations. Therefore, the Agencies' new final rule may resolve or moot some or all of the claims presented in this litigation. And, if a new rule does not resolve the parties' concerns, that new rule could itself be challenged. If a challenge occurs, the parties and reviewing courts would benefit from reviewing the Agencies' new final action and new administrative record, rather than continuing to litigate the NWPR on a record that may be rendered moot and out of date.

The Agencies have conferred with the parties regarding this motion. Plaintiffs have indicated they intend to oppose the motion.[4]

## BACKGROUND

### I. Statutory and Regulatory Overview

The Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA"), seeks "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §§ 1251–1388. Among other provisions, the CWA prohibits "the discharge of any pollutant by any person" without a permit or other authorization, 33 U.S.C. § 1311(a), to "navigable waters," defined as "the waters of the United States," *id.* at § 1362(7).

[4] While the Court has not yet ruled on Michael and Chantell Sackett's motion to intervene in this matter, *see infra* at 9 n.6, they have indicated that they would oppose a remand of the portion of the NWPR defining adjacent wetlands, but would take no position on remand of the remainder of the rule.

The Army Corps of Engineers first promulgated regulations defining "waters of the United States" in the 1970s. Covered waters included only those waters subject to the ebb and flow of the tide or used "for purposes of interstate or foreign commerce." 39 Fed. Reg. 12,115, 12,119 (Apr. 3, 1974). Thereafter, the Corps broadened its interpretation of the phrase. *See, e.g.*, 42 Fed. Reg. 37,122, 37,144 (July 19, 1977). In the 1980s, the Agencies adopted regulatory definitions substantially similar to the 1977 definition; those regulations remained in effect until 2015. *See* 33 C.F.R. § 328.3(a) (1987) (Corps); 40 C.F.R. § 232.2(q) (1988) (EPA) (collectively, the "1986 Regulations"). Over time, the Agencies refined their application of the 1986 Regulations, as informed by three Supreme Court decisions. *See, e.g.*, *United States v. Riverside Bayview Homes*, *Inc.,* 474 U.S. 121 (1985); *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159 (2001); *Rapanos v. United States*, 547 U.S. 715 (2006).

In 2015, the Agencies revised the regulatory definition of "waters of the United States." Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015) (the "2015 Rule"). In 2019, the Agencies repealed the 2015 Rule and reinstated the prior regulatory framework. 84 Fed. Reg. 56,626 (Oct. 22, 2019) ("Repeal Rule"). Then, in 2020, the Agencies again revised the definition of "waters of the United States" with the NWPR.

**II. The NWPR**

The NWPR establishes four categories of jurisdictional waters: "(1) The territorial seas and traditional navigable waters; (2) tributaries of such waters; (3) certain lakes, ponds, and impoundments of jurisdictional waters; and (4) wetlands adjacent to other jurisdictional waters (other than waters that are themselves wetlands)." 40 C.F.R. § 120.2 (EPA); 33 C.F.R. § 328.3 (Corps); *see also* 85 Fed. Reg. at 22,273. The NWPR also establishes exclusions and defines the operative terms used in the regulatory text. 85 Fed. Reg. at 22,270; *see also id*. at 22,340–41 (regulatory text). The NWPR includes "perennial" tributaries that "flow[] continuously year-round" and "intermittent" tributaries that "flow[] continuously during certain times of the year and more than in direct response to precipitation (*e.g.*, seasonally when the groundwater table is elevated or when snowpack melts)." *Id*. at 22,338. Ephemeral

waters (waters that flow in direct response to precipitation) are categorically excluded from jurisdiction under the NWPR. *Id*. at 22,275.

The NWPR also includes "adjacent wetlands" as subject to CWA jurisdiction if they directly abut a jurisdictional water, are "inundated by flooding" from a jurisdictional water during "a typical year," are separated from a jurisdictional water "only by a natural berm, bank, dune, or similar natural feature," or are separated from a jurisdictional water "only by an artificial dike, barrier, or similar artificial structure so long as that structure allows for a direct hydrologic surface connection" between the wetlands and the jurisdictional water in a "typical year." *Id*. at 22,251. Multiple parties have challenged the NWPR in various district courts.[5]

**III. This Litigation**

On June 13, 2018, Plaintiffs filed this lawsuit initially challenging the 2015 Rule. *See* ECF No. 1. On January 9, 2020, Plaintiffs filed a motion for summary judgment with respect to their claims against the 2015 Rule. ECF No. 75. On May 27, 2020, partly in light of the more-recently promulgated Repeal Rule and NWPR, the parties agreed to hold Plaintiffs' motion for summary judgment and claims against the 2015 Rule in abeyance to allow Plaintiffs to supplement their complaint to include claims against both the Repeal Rule and NWPR. ECF No. 82. This Court ultimately denied Plaintiffs'

---

[5] *See Conservation Law Found. v. EPA*, No. 1:20-cv-10820-DPW, ECF No. 1 (D. Mass. Apr. 29, 2020); *California v. Regan*, No. 3:20-cv-03005-RS, ECF No. 1 (N.D. Cal. May 1, 2020); *Chesapeake Bay Found., Inc. v. Regan*, 1:20-cv-01064-RDB, ECF No. 1 (D. Md. Apr. 27, 2020); *N.M. Cattle Growers' Ass'n v. EPA*, 1:19-cv-00988-RB-SCY, ECF No. 26 (D.N.M. Apr. 27, 2020); *Or. Cattlemen's Ass'n v. EPA*, 3:19-cv-00564-MM, ECF No. 90 (D. Or. May 1, 2020); *Wash. Cattlemen's Ass'n v. EPA*, 2:19-cv-00569-JCC, ECF No. 72 (W.D. Wash. May 4, 2020); *Murray v. Wheeler*, 1:19-cv-01498-LEK-TWD, ECF No. 17 (N.D.N.Y. May 11, 2020); *Colorado v. EPA*, 1:20-cv-01461-WJM-NRN, ECF No. 1 (D. Colo. May 22, 2020); *Pasqua Yaqui Tribe v. EPA*, 4:20-cv-00266-RM, ECF No. 1 (D. Ariz. June 22, 2020); *Navajo Nation v. Regan*, 2:20-cv-00602-MV-GJF, ECF No. 1 (D.N.M. June 22, 2020); *Puget Soundkeeper All. v. EPA*, 2:20-cv-00950-JCC, ECF No. 1 (W.D. Wash. June 22, 2020); *Env't Integrity Project v. Wheeler*, 1:20-cv-01734-KBJ, ECF No. 1 (D.D.C. June 25, 2020); *S.C. Coastal Conservation League v. EPA*, 2:20-cv-01687-BHH, ECF No. 1 (D.S.C. Apr. 29, 2020); *Pueblo of Laguna v. Regan*, No. 21-cv-00277-JFR-KK, ECF No. 1 (D.N.M. Mar. 26, 2021).

motion for summary judgment without prejudice, but allowed for "its renewal if and when the 2015 Rule were to become operative again." ECF No. 84 at 1.

On December 23, 2021, Plaintiffs filed their amended complaint, which included claims against the Repeal Rule and NWPR. ECF No. 93. With respect to the NWPR, Plaintiffs' amended complaint generally alleges that the NWPR violates the National Environmental Policy Act, the Endangered Species Act, and the Administrative Procedure Act for a number of reasons including, among other things, that: the Agencies should have prepared an Environmental Impact Statement to assess the impacts of the NWPR, the Agencies failed to adequately consult with U.S. Fish and Wildlife Service and/or National Marine Fisheries Service prior to promulgating the NWPR, the NWPR does not adequately consider the goal or objectives of the CWA, and the NWPR's exclusion of ephemeral streams and certain wetlands as non-jurisdictional waters under the CWA is arbitrary and capricious. *See* ECF No. 93 at pp. 91-96.[6]

On January 20, 2021, President Biden issued an Executive Order entitled "Executive Order on Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis." 86 Fed. Reg. 7037 (Jan. 25, 2021) ("EO 13990"). In conformance with the Executive Order, the Agencies began reviewing a number of regulations promulgated in the last four years, including the NWPR. In light of this directive, on February 11, 2021, the parties filed a stipulation to continue the deadline for the Agencies to file a response to Plaintiffs' amended complaint and to stay the proceeding by 60 days. ECF No. 102. On February 16, 2021, the Court granted the stipulation. ECF No. 103. Then on April 6, 2021, the Agencies filed a motion to further extend their deadline to file a response to Plaintiffs' amended complaint. ECF No. 104. This motion was granted on April 14, 2021. ECF No. 105. On June 16, 2021, the Agencies filed another motion notifying the Court that they intend to file a motion for remand without vacatur by June 22, 2021 and requesting that the Court continue the deadline for the

---

[6] Also, on January 19, 2021, Chantell and Michael Sackett ("Sacketts") moved to intervene in this proceeding. ECF No. 95. Plaintiffs filed an opposition to this motion on February 2, 2021; the Sacketts filed their reply brief on February 9, 2021. ECF Nos. 100, 101. The Court has not yet decided on the Sacketts' motion to intervene.

Agencies to respond to Plaintiffs' amended complaint until after the motion for remand without vacatur is decided. ECF No. 106. The Court granted the motion on June 17, 2021. ECF No. 109.

**IV. The Agencies' Review of the NWPR and Decision to Initiate New Rulemaking.**

The Agencies promulgated the NWPR to define the phrase "waters of the United States," which appears in Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7). On January 20, 2021, following the presidential transition, President Biden issued EO 13990. In relevant part, EO 13990 states that it is the policy of the new administration:

> to listen to the science; to improve public health and protect our environment; to ensure access to clean air and water; to limit exposure to dangerous chemicals and pesticides; to hold polluters accountable, including those who disproportionately harm communities of color and low-income communities; to reduce greenhouse gas emissions; to bolster resilience to the impacts of climate change; to restore and expand our national treasures and monuments; and to prioritize both environmental justice and the creation of the well-paying union jobs necessary to deliver on these goals.

86 Fed. Reg. at 7037. EO 13990 further directed federal agencies to "immediately review and, as appropriate and consistent with applicable law, take action to address the promulgation of Federal regulations and other actions during the last 4 years that conflict with these important national objectives, and to immediately commence work to confront the climate crisis." *Id.*

Over the past few months, the Agencies have been reviewing the NWPR pursuant to EO 13990. As explained in the attached declarations, the Agencies have now reviewed the NWPR and have decided to initiate new rulemaking to revise the definition of "waters of the United States." Ex. 1, Declaration of Radhika Fox ("Fox Decl.") ¶¶ 7–10; Ex. 2, Declaration of Jaime Pinkham ("Pinkham Decl.") ¶¶ 7–10.[7]

---

[7] The declarations of Radhika Fox and Jaime Pinkham were filed as exhibits in support of the Agencies' motion to remand the NWPR without vacatur filed on June 9, 2021 in *Conservation Law Found. v. EPA*, No. 1:20-cv-10820-DPW, Dkt. Nos. 113-1 and 113-2 (D. Mass. June 9, 2021). They are attached hereto as Exs. 1 and 2.

**STANDARD OF REVIEW**

Agencies have inherent authority to reconsider past decisions and to revise, replace, or repeal a decision to the extent permitted by law and supported by a reasoned explanation. *FCC v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 42 (1983). Further, an agency's interpretation of a statute it administers is not "carved in stone" but must be evaluated "on a continuing basis," for example, "in response to . . . a change in administrations." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (internal quotation marks and citations omitted). Voluntary remand is proper where an agency requests a " 'remand (without confessing error) in order to reconsider its previous position.' " *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, No. C-09-4029 EMC, 2011 WL 3607790, at *3 (N.D. Cal. Aug. 16, 2011) (quoting *SKF USA, Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)); *see also Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) ("A federal agency may request remand in order to reconsider its initial action.").

"Voluntary remand is consistent with the principle that '[a]dministrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider.' " *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136, 1141 (C.D. Cal. 2002) (citing *Trujillo v. Gen. Elec. Co*., 621 F.2d 1084, 1086 (10th Cir. 1980)). Voluntary remand also "promotes judicial economy" by allowing agencies to reconsider prior decisions "without further expenditure of judicial resources." *Nat. Res. Def. Council, Inc.*, 275 F. Supp. 2d at 1141.

In the Ninth Circuit, "[g]enerally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Cal. Cmtys.*, 688 F.3d at 992. "[I]f the agency's concern is substantial and legitimate, a remand is usually appropriate." *Neighbors Against Bison Slaughter v. Nat'l Park Serv*., No. CV 19-128-BLG-SPW, 2021 WL 717094, at *2 (D. Mont. Feb. 5, 2021) (quoting *SKF*, 254 F.3d at 1029); *see also Limnia, Inc. v. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017) (holding that remand should be granted so long as "the agency intends to take further action with respect to the original agency decision on review"). In exercising its discretion to grant

remand, a court may consider whether any party opposing remand would be unduly prejudiced. *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C. 2015).

**ARGUMENT**

Remand is proper in this case because the Agencies have completed their review of the NWPR and have decided to initiate new rulemaking to define "waters of the United States." Fox Decl. ¶¶ 7–10; Pinkham Decl. ¶¶ 7–10. Through this review process, they have identified good faith, "substantial and legitimate" concerns regarding the NWPR. Moreover, remand would also conserve judicial resources and would not unduly prejudice the parties.

**I. The Agencies Have Legitimate and Good Faith Grounds for Seeking Voluntary Remand.**

An agency may seek remand because it wishes to revisit its interpretation of the governing statute, the procedures it followed in reaching its decision, or the decision's relationship to other agency policies. *SKF*, 254 F.3d at 1028–29. The Agencies seek remand for these exact reasons. The Agencies conducted a review of the NWPR. Fox Decl. ¶ 10; Pinkham Decl. ¶ 10. Through that review, the Agencies "have identified substantial concerns with the NWPR and have determined that additional consideration should be given to certain aspects of the NWPR through notice-and-comment rulemaking[.]" *Id.*

Voluntary remand is appropriate because the Agencies have identified good faith, "substantial and legitimate concerns" with the NWPR and intend to embark upon a rulemaking process to replace the rule. *SKF*, 254 F.3d at 1029 ("[I]f the agency's concern [with the challenged action] is substantial and legitimate, a remand is usually appropriate."). "Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Cal. Cmtys.*, 688 F.3d at 992. Here, the Agencies have explained that they have substantial concerns about certain aspects of the NWPR and the effects of the NWPR on the nation's waters, including whether the NWPR adequately considered the CWA's statutory objective in determining the scope of "waters of the United States" and, as a result, whether the process adequately considered the effects of the NWPR on the integrity of the nation's waters. Fox Decl. ¶¶ 10, 12; Pinkham Decl. ¶¶ 10, 12. For example, the Agencies have identified concerns about whether sufficient consideration was given to the impact of the NWPR's

categorical exclusion of ephemeral waters. Fox Decl. ¶ 14; Pinkham Decl. ¶ 14. In addition, the Agencies have noted on-the-ground effects of the NWPR since the rule went into effect, which reinforces their conclusion that a new rulemaking in which the Agencies will reconsider issues of concern with the NWPR and its impacts is warranted. Fox Decl. ¶¶ 15–20; Pinkham Decl. ¶¶ 15–20. Remand would give the Agencies an opportunity to fully explore and address these issues and the concerns of Plaintiffs and other stakeholders, through the administrative rulemaking process. Fox Decl. ¶ 14; Pinkham Decl. ¶ 14.

Remand would also allow the Agencies to develop a new administrative record, which would benefit the Court and the parties if a new rule were to be litigated. "[T]his kind of reevaluation is well within an agency's discretion," *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1038 (D.C. Cir. 2012) (citing *Fox Television Stations, Inc*., 556 U.S. at 514–15), and courts should allow it. *See Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018).

Moreover, deferring to the Agencies' new rulemaking process also promotes important jurisprudential interests. "In the context of agency decision making, letting the administrative process run its course before binding parties to a judicial decision prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference' in an ongoing decision-making process." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) (citation omitted). Allowing the administrative process to run its course here will let the Agencies "crystalliz[e] [their] policy before that policy is subjected to judicial review," *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999), and avoid "inefficient" and unnecessary "piecemeal review." *Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 30 (D.C. Cir. 1984) (citation and internal quotation marks omitted).

Courts have granted remand in similar situations. In *SKF USA Inc.*, the Federal Circuit found a remand to the Department of Commerce appropriate in light of the agency's change in policy. 254 F.3d at 1025, 1030. Likewise, in *FBME Bank Ltd.*, the District Court for the District of Columbia remanded a rule to the Department of the Treasury to allow the agency to address "serious 'procedural concerns,'"

including "potential inadequacies in the notice-and-comment process as well as [the agency's] seeming failure to consider significant, obvious, and viable alternatives." 142 F. Supp. 3d at 73.

The Agencies are not requesting vacatur of the NWPR during the remand. Courts have the discretion to remand an agency decision without vacatur. *Cal. Cmtys.*, 688 F.3d at 992. Factors a court can consider include the seriousness of the rule's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of granting vacatur when an interim change may itself be changed. *Id.* (citing *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). In light of the Agencies' stated intent to address their substantial concerns with the NWPR through a new rulemaking, the Agencies request that the Court order a remand and are not including a request for vacatur.

**II. Granting Remand Conserves Judicial Resources.**

Granting remand here promotes judicial economy and conserves the parties' and the Court's resources. Courts "have recognized that '[a]dministrative reconsideration is a more expeditious and efficient means of achieving an adjustment of agency policy than is resort to the federal courts.' " *B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990) (quoting *Commonwealth of Pennsylvania v. ICC*, 590 F.2d 1187, 1194 (D.C. Cir. 1978)). Indeed, courts acknowledge that voluntary remand "promotes judicial economy" by allowing the agency to re-consider its own decision "without further expenditure of judicial resources." *Nat. Res. Def. Council*, 275 F. Supp. 2d at 1141 (citing *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)). Allowing the Agencies to proceed with a new rulemaking allows them to address concerns with the NWPR through the administrative process. The Agencies might resolve the Plaintiffs' concerns through that process, potentially rendering unnecessary future litigation that could strain the Court's and parties' resources. Remand would preserve those resources.

In addition, continuing to litigate this case wastes the parties' resources in the present, resources that could be better spent on the rulemaking process. Because many of the issues presently before the Court will be re-evaluated in the Agencies' new rulemaking, remand to the Agencies will allow the Agencies to focus their resources on the new rulemaking with input from Plaintiffs and other interested

stakeholders. Fox Decl. ¶ 14; Pinkham Decl. ¶ 14. In particular, ongoing litigation could interfere with the Agencies' rulemaking, as the Agencies would have to prioritize pending litigation deadlines. *See Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 43 (D.D.C. 2013) (because agency did "not wish to defend" the action, "forcing it to litigate the merits would needlessly waste not only the agency's resources but also time that could instead be spent correcting the rule's deficiencies").

Moreover, given that merits briefing has not begun and the Agencies have not filed a response to Plaintiffs' amended complaint, remand would save judicial resources and render unnecessary further litigation with respect to the NWPR. The Agencies' new rulemaking may fully address and resolve Plaintiffs' concerns or, at least, narrow the issues if Plaintiffs were to challenge a new rule arising out of the new rulemaking. Even if remand does not resolve all of the claims presented by Plaintiffs, subsequent judicial review will likely turn on a new and different record that will necessarily alter the nature of this Court's review. Therefore, continuing to litigate the very same issues that the Agencies may resolve through a new rulemaking "would be inefficient," *FBME Bank*, 142 F. Supp. 3d at 74, and a waste of judicial resources.

**III. Remand Would Not Prejudice the Parties.**

Remand would not prejudice any party. The Agencies intend to consider and evaluate issues raised in the various legal challenges to the NWPR during the rulemaking process, including arguments made by the Plaintiffs in this case. Fox Decl. ¶¶ 8–10; Pinkham Decl. ¶¶ 8–10. As addressed above, the Agencies may revise or replace the NWPR in a way that resolves Plaintiffs' claims. For example, Plaintiffs claim that the NWPR did not adequately consider the CWA's statutory goals and objective and arbitrarily excluded ephemeral waters and certain wetlands as non-jurisdictional under the CWA. *See* ECF No. 93 (Plaintiffs' amended complaint) at ¶¶ 298-301. The Agencies intend to consider these very issues on remand. Fox Decl. ¶ 13; Pinkham Decl. ¶ 13. Through their rulemaking process, the Agencies will consider the policies set forth in EO 13990 and intend to ensure that "waters of the United States" is defined in a manner consistent with the CWA's statutory objective. In addition, Plaintiffs will have the opportunity to participate through the notice and comment process by submitting comments on any new proposed rule. Fox Decl. ¶ 10; Pinkham Decl. ¶ 10.

## CONCLUSION

The Agencies have identified numerous concerns with the NWPR, many of which have been raised by Plaintiffs in this case, and intend to evaluate those concerns through a new notice-and-comment rulemaking. Fox Decl. ¶¶ 9–20; Pinkham Decl. ¶¶ 9–20. Where, as here, the Agencies have committed to reconsidering the challenged action, the proper course is remand to allow the Agencies to address their concerns through the administrative process. The Agencies respectfully ask the Court to remand the NWPR, without vacatur, and to dismiss this case, rather than requiring the Agencies to litigate a rule that may be replaced.

Dated: June 22, 2021

Respectfully submitted,

By: /s/ *Hubert T. Lee*

HUBERT T. LEE (NY Bar #4992145)
SONYA J. SHEA (CA Bar #305917)
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
4 Constitution Square
150 M Street, NE
Suite 4.1116
Washington, D.C. 20002
Hubert.lee@usdoj.gov
sonya.shea@usdoj.gov
Telephone (202) 514-1806 (Lee)
Telephone (303) 844-7231 (Shea)
Facsimile (202) 514-8865

*Attorneys for the Agencies*