ANTHONY L. FRANÇOIS, No. 184100
afrancois@pacificlegal.org
CHARLES T. YATES, No. 327704
cyates@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Attorneys for Defendant-Intervenors*
*Chantell and Michael Sackett*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WATERKEEPER ALLIANCE, INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendants,<br><br>CHANTELL SACKETT; MICHAEL SACKETT,<br><br>Defendant-Intervenors. | No. 3:18-cv-03521-RS<br><br>**DEFENDANT-INTERVENORS THE SACKETTS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR REMAND**<br><br>Date:          July 29, 2021<br>Time:         1:30 p.m.<br>Place:        San Francisco Courthouse<br>                   Courtroom 3 – 17th  Floor<br>Judge:       The Hon. Richard Seeborg<br><br>Action Filed:                    June 13, 2018<br>Amended Complaint Filed: Dec. 23, 2020 |

1

# TABLE OF CONTENTS

2

**Page(s)**

TABLE OF CONTENTS............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...................................................................................................................... 2

BACKGROUND ........................................................................................................................ 3

     I.     The Clean Water Act and the Agencies' Historic Failure To Define  "Navigable
           Waters"................................................................................................................... 3

     II.    The Navigable Waters Protection Rule and the Exclusion of Non-Abutting
           Wetlands  from Federal Authority ......................................................................... 4

     III.   This Lawsuit........................................................................................................... 5

     IV.   Executive Order 13990 and the Agencies' Decision To Redefine "Navigable
           Waters" Yet Again ............................................................................................... 6

STANDARD OF REVIEW ........................................................................................................ 7

ARGUMENT .............................................................................................................................. 9

     I.     The Court *Need Not* Remand the Entire Rule in Response to the Agencies'
           Motion ................................................................................................................... 9

     II.    The Court *Should* Deny the Agencies' Motion for Remand as to the "Adjacent
           Wetlands" Provisions of the Rule ....................................................................... 10

     III.   This Court Should Reject Waterkeeper's Request for Remand With  Vacatur and
           Instead Treat it as a Request for Adjudication on the Merits................................ 15

CONCLUSION ........................................................................................................................ 17

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

<u>**Cases**</u>

4

*All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105 (9th Cir. 2018) ............................ 15

5

*Allina Health Servs. v. Sebelius*, 746 F.3d 1102 (D.C. Cir. 2014)........................................ 15–16

6

*Am. Paper Inst. v. EPA*, 660 F.2d 954 (4th Cir. 1981) ................................................................. 8–9

7

*Am. Petroleum Inst. v. EPA*, 683 F.3d 382 (D.C. Cir. 2012) .................................................. 13–14

8

*Ark. AFL-CIO v. Fed. Commc'ns Comm'n.*, 11 F.3d 1430 (8th Cir. 1993)................................ 13

9

*Ass'n v. Interstate Commerce Comm'n*, 784 F.2d 959 (9th Cir. 1986)........................................ 13

10

*ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059 (C.D. Cal. 2016)........................................ 16

11

*Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Norton,*
12
    527 F. Supp. 2d 130 (D.D.C. 2007) .................................................................. 8, 11

13

*Bldg. Indus. Legal Def. Found v. Norton*, 231 F. Supp. 2d 100 (D.D.C. 2002) ......................... 16

14

*Cal. Communities Against Toxics v. EPA*, 688 F.3d 989 (9th Cir. 2012)........................................ 8

15

*Ctr. for Envtl. Health v. Vilsack,*
16
    No. 15-CV-01690-JSC, 2016 WL 3383954 (N.D. Cal. June 20, 2016) ................................ 15

17

*Ctr. for Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236 (D. Colo. 2011) .......................... 16

18

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
19
    467 U.S. 837 (1984)................................................................................ 6, 9, 12

*George Hyman Const. Co. v. Brooks*, 963 F.2d 1532 (D.C. Cir. 1992)................................ 12, 15
20

21

*Georgia v. Wheeler*, No. 2:15-cv-00079, 2019 WL 3949922 (S.D. Ga. Aug. 21, 2019) .............. 4

22

*Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995) ........................................ 15

23

*Koyo Seiko Co. v. United States*, 95 F.3d 1094 (Fed. Cir. 1996)........................................ 13

24

*Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379 (D.C. Cir. 2017) ........................................ 7–9

25

*Lutheran Church-Missouri Synod v. Fed. Comm. Comm'n,*
26
    141 F.3d 344 (D.C. Cir. 1998) ........................................................................ 8, 14

*Maine v. Wheeler*, No. 1:14-cv-00264-JDL, 2018 WL 6304402 (D. Me. Dec. 3, 2018) ............. 15
27

28

*Miss. River Transmission Corp. v. FERC*, 969 F.2d 1215 (D.C. Cir. 1992) ................................ 8

*N.C. Comm'n of Indian Affairs v. U.S. Dep't of Labor*,
    725 F.2d 238 (4th Cir. 1984), *cert. denied,* 469 U.S. 828 (1984) ........................................... 13

*N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 248 F.3d 1277 (10th Cir. 2001) .......... 9

*Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136 (C.D. Cal. 2002) ..... 8

*Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3 (D.D.C. 2009) ........................... 15

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005) ...................................................................................................... 6

*NTN Bearing Corp. of Am. v. United States*, 46 F. Supp. 3d 1375 (Ct. Int'l Trade 2015) ......... 8–9

*Pollinator Stewardship Council v. EPA*, 806 F.3d 520 (9th Cir. 2015)....................................... 15

*Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.*,
    740 F.2d 21 (D.C. Cir. 1984) ........................................................................................ 14

*Railway Labor Execs.' Ass'n v. Interstate Commerce Comm'n*,
    784 F.2d 959 (9th Cir. 1986)......................................................................................... 13

*Rapanos v United States*, 547 U.S. 715 (2006).............................................................. 3–4, 6, 11

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ...................................... 9, 12

*Securities and Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947) ................................ 13

*SKF USA Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001) ............................................ 9, 12

*Social Sec. Bd. v. Nierotko*, 327 U.S. 358 (1946) ................................................................ 9, 12

*Union Pacific R.R. Co. v. U.S. Dep't of Homeland Sec.*, 738 F.3d 885 (8th Cir. 2013)............... 12

*United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*,
    No. C-09-4029 EMC, 2011 WL 3607790 (N.D. Cal. Aug. 16, 2011)................................. 8-9

*Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43 (D.C. Cir. 1999)........................... 12–13

*Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) ....................................................................... 12

**Statutes**

5 U.S.C. § 706(2)(A)............................................................................................................. 16

33 U.S.C. § 1251, *et seq.*........................................................................................................ 3

33 U.S.C. § 1311 ................................................................................................................... 3

33 U.S.C. § 1362 ................................................................................................................... 3

**Regulations**

33 C.F.R. § 328.3 (1987) ......................................................................................... 3

33 C.F.R. § 328.3 (2016) ......................................................................................... 4

33 C.F.R. § 328.3 ..................................................................................................... 4

33 C.F.R. § 328.3(a), (b), (c), (c)(1)(i)-(iv).............................................................. 5

33 C.F.R. § 328.3(a)(7) & (c) (1987) ....................................................................... 3

40 C.F.R. § 120.2 ..................................................................................................... 5

**Other Authorities**

80 Fed. Reg. 37,054 (June 29, 2015) ....................................................................... 4

84 Fed. Reg. 56,626 (Oct. 22, 2019) ....................................................................... 4

85 Fed. Reg. 22,250 (Apr. 21, 2020) ................................................................... 4–5

86 Fed. Reg. 7037 (Jan. 25, 2021) ........................................................................... 6

Black's Law Dictionary (4th ed. 1951) ................................................................... 16

*EPA, Army Announce Intent to Revise Definition of WOTUS*, EPA News Releases
   (June 9, 2021), https://www.epa.gov/newsreleases/epa-army-announce-intent-
   revise-definition-wotus ........................................................................................ 6

Fine, Toni M., *Agency Requests for "Voluntary" Remand: A Proposal for
   the Development of Judicial Standards*, 28 Ariz. St. L.J. 1079 (1996) ................ 15

Order, *Farmworker Ass'n of Fla. v. EPA*, No. 21-1079 (D.C. Cir. June 7, 2021)...... 16

Revesz, Joshua, *Voluntary Remands: A Critical Reassessment*,
   70 Admin. L. Rev. 361 (2018) ............................................................................ 14

## INTRODUCTION

Defendant-Intervenors Chantell and Michael Sackett (the Sacketts) oppose the United States Environmental Protection Agency (EPA) and the United States Army's (Army) (together "the Agencies"), motion for voluntary remand to the extent it seeks remand of the "adjacent wetlands" provisions of the Navigable Waters Protection Rule (Rule). They also oppose Plaintiffs' request that the Rule be vacated in the event it is remanded.

This case centers on the Agencies' decades-long failure to define "navigable waters" within the meaning of the Clean Water Act. Plaintiffs Waterkeeper Alliance, Inc., *et al*.'s (Waterkeeper) claim that the Agencies engaged in discretionary decisionmaking when they adopted the Navigable Waters Protection Rule, and that they abused that discretion in so acting. In their defense the Agencies have consistently argued that the Rule was an allowable exercise of agency discretion, entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, and *National Cable & Telecommunications Association v. Brand X Internet Services*. And, by implication of the Agencies' defense, the Rule is subject to revision in the future. Now, by asking for remand of the Rule, the Agencies ask this Court to implicitly affirm their claimed discretion to revise the definition of "navigable waters" (for the fourth time in six years).

But as to the Rule's definition of "adjacent wetlands," the Agencies have no such discretion. A plain reading of the text of the Clean Water Act, as authoritatively interpreted by the Supreme Court, precludes the Agencies from regulating wetlands that do not directly abut other regulable water bodies. The Agencies' decision to exclude most non-abutting wetlands in the Rule is compelled by the statute and is not a discretionary decision. Since this action was nondiscretionary, that provision of the Rule cannot be expanded by the Agencies on remand. By seeking pre-merits remand, the Agencies seek to evade judicial review, effectively denying the Sacketts their right as parties to defend Waterkeeper's claims against the Rule's "adjacent wetlands" definition on its merits as compelled by the statute.

This Court need not and should not remand the entire Rule. The Sacketts are ready to brief the merits of the Rule's exclusion of non-abutting wetlands from Agency authority, to the extent Waterkeeper wants to litigate that question (which they appear to, see below). Considering the

1    Agencies' stated intention to revisit the "adjacent wetlands" provisions of the Rule on remand, that

2    controversy remains live and in need of resolution. This Court should exercise its discretion to deny

3    remand of the Rule's "adjacent wetlands" definition and determine this question of statutory

4    construction on the merits. For the same reasons, the Court should reject Waterkeeper's request

5    that the "adjacent wetlands" provisions of the Rule be vacated without adjudication on the merits.

6    While vacatur may be the ordinary remedy for a violation of the Administrative Procedure Act

7    (APA), it can only follow an adjudication of the merits of such a claim. Waterkeeper will need to

8    make clear, therefore, whether it wants to litigate its APA claims. But, Waterkeeper cannot have

9    an APA remedy before all parties have had a full and fair chance to litigate the merits of its APA

10   claims.

11   **BACKGROUND**

12        The following background of the Rule is necessary to evaluate the context of the Agencies'

13   motion to remand.

14   **I.    The Clean Water Act and the Agencies' Historic Failure To Define
15        "Navigable Waters"**

16        This case centers on EPA and the Army's decades-long attempt to define "navigable

17   waters" as used in the Clean Water Act without violating the statute or the Constitution. That Act,

18   33 U.S.C. § 1251, *et seq.*, regulates discharges of "pollutants" from "point sources" to "navigable

19   waters." 33 U.S.C. §§ 1311(a), 1362(12). The Act defines "navigable waters" as "waters of the

20   United States, including the territorial seas." *Id.* § 1362(7). Although the Act defines "territorial

21   seas," it does not otherwise define "waters of the United States." *Id.* § 1362(8).

22        Despite the need for a durable and legally sound definition of "navigable waters," there

23   have been many failed attempts over the years. As a result, the scope of the Agencies' control over

24   Americans' property has remained in a near constant state of flux. This is especially true of non-

25   navigable wetlands. In 1986, the Army adopted a definition that stretched "navigable waters" to

26   include all non-navigable wetlands "adjacent" (broadly defined as "bordering, contiguous, or

27   neighboring") to any other regulated waters. *See* 33 C.F.R. § 328.3 (1987) (the 1986 Regulations);

28   *id*. § 328.3(a)(7) & (c) (1987) (defining "adjacent wetlands").

In 2006, a divided Supreme Court rejected this definition as exceeding the scope of the statutory term "navigable waters." *Rapanos v. United States*, 547 U.S. 715, 739 (2006). In assessing the legality of the 1986 Regulations, a four-Justice plurality determined that the language, structure, and purpose of the Clean Water Act restrict federal authority over non-navigable wetlands to only those that physically abut relatively permanent and continuously flowing waters, with an immediate surface water connection making the wetland and water body "indistinguishable." *Id.* at 755.

Justice Kennedy provided a fifth vote rejecting the 1986 Regulations' definition of "adjacent wetlands" as overbroad, joining the plurality in the judgment. But he proposed a broader interpretation of "navigable waters" than the plurality: the "significant nexus" test. *Id.* at 759 (Kennedy, J., concurring). Under this view, the government can regulate a non-abutting wetland if it significantly affects the physical, chemical, and biological integrity of a navigable-in-fact waterway. *Id.* at 779–80 (Kennedy, J., concurring). Wetlands may be analyzed under this standard either standing alone or in combination with features "similarly situated" within an otherwise undefined "region." *Id.* at 780 (Kennedy, J., concurring).

After several years of effort to address *Rapanos*, EPA and the Army adopted new regulations in 2015 redefining "navigable waters," including a new and very broad definition of "adjacent wetlands." 33 C.F.R. § 328.3 (2016); 80 Fed. Reg. 37,054 (June 29, 2015) (the 2015 Rule). Several lawsuits challenged the 2015 Rule. On August 21, 2019, the U.S. District Court for the Southern District of Georgia ruled that the 2015 Rule violated the Clean Water Act and permanently enjoined it. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1382–83 (S.D. Ga. 2019). A short time later, partially in response to *Georgia v. Wheeler*, EPA and the Army published a regulation that repealed the 2015 Rule and readopted the 1986 Regulations. 84 Fed. Reg. 56,626 (Oct. 22, 2019) (the 2019 Repeal Rule).

## II.     The Navigable Waters Protection Rule and the Exclusion of Non-Abutting Wetlands from Federal Authority

On April 21, 2020, EPA and the Army again redefined "navigable waters" by publishing the Navigable Waters Protection Rule at issue in this case. 85 Fed. Reg. 22,250 (Apr. 21, 2020). This Rule defines "navigable waters" as comprising four separate categories: "the territorial seas,"

"tributaries," "lakes and ponds, and impoundments of jurisdictional waters," and "adjacent wetlands," 33 C.F.R. § 328.3(a). The Rule also lists features that are not "navigable waters," 33 C.F.R. § 328.3(b), and defines terms used in the operative text of the Rule, 33 C.F.R. § 328.3(c).[1] The Rule defines "adjacent wetlands," as wetlands that abut or are flooded by other regulated waters or are physically separated from such waters only by natural barriers or by permeable artificial barriers. 33 C.F.R. § 328.3(c)(1)(i)–(iv). The Rule excludes from federal authority most wetland features that do not directly abut other regulable water bodies. Many of these "excluded" wetlands were regulated under prior broader definitions of "adjacent wetlands."

### III.   This Lawsuit

Waterkeeper initially filed this lawsuit on June 13, 2018, to partially challenge EPA and the Army's adoption of the 2015 Rule. *See* ECF No. 1. On May 27, 2020—following the repeal of the 2015 Rule by the 2019 Repeal Rule and the subsequent adoption of the Navigable Waters Protection Rule—the parties stipulated to a stay of the parties' remaining summary judgment briefing on the 2015 Rule. *See* ECF Nos. 82–83.

On December 22, 2020, Waterkeeper moved to file an amended complaint adding claims against the Navigable Waters Protection Rule. ECF No. 91. That request was granted the next day and Waterkeeper subsequently filed its amended complaint. *See* ECF Nos. 92–93. Among other things, Waterkeeper's amended complaint alleges that in excluding previously regulated non-abutting wetlands from the Rule, the Agencies abused their discretion. *See* ECF No. 93 at ¶¶ 10–11, 205, 208, 210, 215, 248–246, 280, 298–301. Waterkeeper asks the Court to declare that the Navigable Waters Protection Rule is unlawful and vacate it in its entirety. *Id.* at 111.

On January 19, 2021, the Sacketts moved to intervene. ECF No. 95. The Sacketts—who have fought a fourteen-year battle with EPA over permission to build a house on their vacant residential lot in Priest Lake, Idaho, which EPA claims is occupied by a federally regulated

---

[1] Subsequent references to 33 C.F.R. § 328.3 and its subdivisions are, unless indicated otherwise, to the version published in the Federal Register on April 21, 2020, at 85 Fed. Reg. at 22,338–39, and the identical provisions at 40 C.F.R. § 120.2, published the same date at 85 Fed. Reg. at 22,340–41. 40 C.F.R. § 120.2(3)(i) corresponds to 33 C.F.R. § 328.3(c)(1). For ease of reference, and to demonstrate the severability of the portions of the Rule defining "adjacent wetlands," the Sacketts have attached a reproduction of the full text of 33 C.F.R. § 328.3, as Exhibit 1 to this filing.

1    wetland—moved to intervene to defend the Rule's definition of "adjacent wetlands" because that

2    definition rightly excludes their property. *See* ECF No. 95 at 7–9, 13–15; ECF No. 95-1 at 2–4, ¶¶

3    7–16 (Declaration of Chantell Sackett). The Sacketts—in contrast to the Agencies[2]— argue that

4    Waterkeeper's claims as to the Rule's definition of "adjacent wetlands" fail as a matter of law

5    because the exclusion of non-abutting wetlands from federal regulation is not a matter of agency

6    discretion. *See* ECF No. 95 at 16–18. Instead, the exclusion of these wetlands is *compelled* by a

7    plain reading of the text of the Clean Water Act, as authoritatively interpreted by the Supreme

8    Court—namely the controlling plurality opinion in *Rapanos*. *See id*. This Court granted the

9    Sacketts' motion on June 23, 2021, ECF 111, and they filed their Answer on June 30, 2021, ECF

10   112.

11   **IV.    Executive Order 13990 and the Agencies' Decision To Redefine "Navigable Waters"**

12   **Yet Again**

13       On January 20, 2021, President Biden signed Executive Order 13990. *See* 86 Fed. Reg.

14   7037, 7037 (Jan. 25, 2021). Executive Order 13990 directs the heads of the Agencies to "review

15   all existing regulations . . . promulgated . . . between January 20, 2017, and January 20, 2021," and

16   "consider suspending, revising, or rescinding" any actions inconsistent with the policies of the new

17   administration. *Id.* The Navigable Waters Protection Rule was identified for review under the

18   Executive Order. *See* ECF No. 110 at 10. Following a 60-day stay of this litigation and an extension

19   of time for the Agencies to respond to Waterkeeper's amended complaint, ECF Nos. 102–05, the

20   Agencies concluded their review of the Navigable Waters Protection Rule on June 9, 2021. ECF

21   No. 110 at 11.

22       Following their review of the Rule under Executive Order 13990, the Agencies announced

23   that they would rewrite the definition of "navigable waters" yet again. *See EPA, Army Announce*

24   *Intent to Revise Definition of WOTUS*, EPA News Releases (June 9, 2021),

25   https://www.epa.gov/newsreleases/epa-army-announce-intent-revise-definition-wotus.        On

26   _____

27   [2] The Agencies have consistently defended the Rule as an allowable exercise of discretion under
     *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and
28   *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967
     (2005).

1    June 16, 2021, the Agencies moved for a further extension to respond to the operative complaint,

2    and notified the Court of their intention to move for remand without vacatur. ECF No. 106.

3    Waterkeeper did not oppose the extension of time to plead but indicated it would partially oppose

4    any motion for remand and request an order vacating the Rule (including its definition of "adjacent

5    wetlands"). *See* ECF No. 107 at 2–3.

6         The Court granted the Agencies' motion for enlargement of time on June 17, 2021, ECF

7    No. 109, and on June 22, 2021, the Agencies moved for voluntary remand without vacatur, ECF

8    No. 110. In support of that motion the Agencies submitted declarations describing the outcome of

9    their review of the Rule. *See* ECF Nos. 110-1 (Declaration of Radhika Fox), 110-2 (Declaration of

10   Jaime Pinkham). Pertinent to the controversy between Waterkeeper and the Sacketts, the Agencies

11   expressed concern regarding the Rule's exclusion of previously regulated non-abutting wetland

12   features and indicated an intention to revisit the Rule's definition of "adjacent wetlands." *See* ECF

13   Nos. 110-1 ¶¶ 17–18, 20 (Fox Decl.), 110-2 ¶¶ 17–18, 20 (Pinkham Decl.). On July 2, 2021,

14   Waterkeeper partially opposed the Agencies' motion for remand and requested an order vacating

15   the entire Rule (including its definition of "adjacent wetlands"). *See* ECF No. 113.

16                                    **STANDARD OF REVIEW**

17        Voluntary remand without vacatur is an equitable remedy that is within the sound

18   discretion of the Court to deny or grant. *See Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379,

19   381 (D.C. Cir. 2017) ("A district court has broad discretion to decide whether and when to grant

20   an agency's request for a voluntary remand"). When presented with a motion to remand, the Court

21   may either adjudicate the merits of an agency action or remand it. The moving government party

22   bears the burden of establishing the propriety of voluntary remand prior to a decision on the merits.

23   *See Limnia*, 857 F.3d at 381. Three factors are worthy of this Court's consideration in exercising

24   its discretion to grant or deny the Agencies' motion.

25        First, courts can and do refuse to grant voluntary remand in circumstances where to do so

26   would be inappropriate. *See Lutheran Church-Missouri Synod v. Fed. Comm. Comm'n*, 141 F.3d

27   344, 349 (D.C. Cir. 1998) (denying motion for voluntary remand where remand would enable an

28   agency to strategically avoid judicial review). *See also Assiniboine & Sioux Tribes of Fort Peck*

1    *Indian Reservation v. Norton*, 527 F. Supp. 2d 130, 136 (D.D.C. 2007) (refusing to grant voluntary

2    remand in part because, due to historic failures, the district court was not persuaded the moving

3    agency would on remand resolve issues identified by the litigation or conform its conduct to

4    statutory mandate); *Limnia*, 857 F.3d at 387 (finding voluntary remand inappropriate where the

5    agency did not intend to "take further action with respect to the *original agency decision on*

6    *review*" and remand would instead have "function[ed] . . . as a dismissal of a party's claims");

7    *Miss. River Transmission Corp. v. FERC*, 969 F.2d 1215, 1217 at n. 2 (D.C. Cir. 1992) (denying

8    remand where a motion for remand was filed late in the judicial review process and without

9    observance of proper procedure).

10       Second, a reviewing court may partially remand an agency action and partially adjudicate

11    its merits. *See United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, No. C-09-4029

12    EMC, 2011 WL 3607790, at *5–6 (N.D. Cal. Aug. 16, 2011) (granting voluntary partial remand

13    of one issue and setting a plan for adjudication of the non-remanded issues); *Am. Paper Inst. v.*

14    *EPA*, 660 F.2d 954, 965–66 (4th Cir. 1981) (granting partial remand of a rule to allow the agency

15    to correct data errors but adjudicating the remainder of petitioners' claims on the merits); *NTN*

16    *Bearing Corp. of Am. v. United States*, 46 F. Supp. 3d 1375, 1382 (Ct. Int'l Trade 2015) (granting

17    partial voluntary remand of an agency decision and adjudicating the merits of the remainder of

18    plaintiff's claims).[3]

19       Third, where an agency believes its original decision was incorrect and its remand request

20    is predicated on "a change in agency policy or interpretation," the way in which a court will

---

[3] Moreover, reviewing courts often make determinations on the merits *concurrently* with acting on a motion for voluntary remand. The Agencies cite two reported decisions from Ninth Circuit courts for the proposition that this Court has broad discretion to grant their request for pre-merits voluntary remand. *See* ECF No. 110 at 12 (citing *Cal. Communities Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012); *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136, 1141 (C.D. Cal. 2002). But in both of those cases, the reviewing court made substantive findings on the merits of the plaintiffs' claims, prior to granting the government's request for remand. *See California Communities Against Toxics v. EPA*, 688 F.3d 989, 993 (9th Cir. 2012) (finding that the challenged rule was substantively and procedurally flawed and therefore invalid prior to entering a request for voluntary remand); *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136, 1145 (C.D. Cal. 2002) ("There is no doubt that the Fish and Wildlife Service's failure to perform a proper economic impact analysis in compliance with section 4(b)(2) of the ESA . . . was substantive error under *New Mexico Cattle Growers*." (citing and adopting the reasoning of *N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 248 F.3d 1277, 1285 (10th Cir. 2001))).

1   exercise its discretion differs if the challenged agency action was statutorily compelled (or

2   forbidden) under *Chevron* Step One. *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1029–30

3   (Fed. Cir. 2001). Although a reviewing court may still grant remand, it may also decide the

4   statutory issue where the circumstances warrant. *See id.* This rule conforms to the Ninth Circuit's

5   approach to *Chevron*, *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009)

6   ("[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the

7   agency, must give effect to the unambiguously expressed intent of Congress." (quoting *Chevron,*

8   467 U.S. at 842–43)), as well as to broader principles of administrative law, *cf. Social Sec. Bd. v.*

9   *Nierotko,* 327 U.S. 358, 369 (1946) ("it is a 'judicial function'," and not an agency function, to

10   decide the final "limits of its statutory power").

11   **ARGUMENT**

12   **I.    The Court *Need Not* Remand the Entire Rule in Response to the Agencies'**
       **Motion**

13

14          The Court need not remand the Navigable Waters Protection Rule in its entirety. Instead, it

15   may require the Agencies to file an answer and permit the parties to brief the merits of

16   Waterkeeper's claims against the "adjacent wetlands" provisions of the Rule. As noted, this Court

17   has wide latitude to deny or grant a motion for remand. *See Limnia*, 857 F.3d at 381. And this

18   discretion includes the latitude to partially remand an agency rule and adjudicate the remaining

19   merits. *See Gonzales & Gonzales*, 2011 WL 3607790, at *5–*6; *Am. Paper Inst.*, 660 F.2d at 965–

20   66; *NTN Bearing Corp.*, 46 F. Supp. 3d at 1382. Under the circumstances of the present case, partial

21   remand[4] and partial adjudication is especially appropriate.

22          The Court should not remand the entire rule. One discrete aspect of the Rule is its definition

23   of "adjacent wetlands" as wetlands that abut or are flooded by other regulated waters or are

24   physically separated from such waters only by natural barriers or permeable artificial barriers. 33

25   C.F.R. § 328.3(c)(1). This definition—the fourth of four categories of waters identified as regulable

26   in the text of the Rule—is severable from the remainder of the Rule. *See id*. The "adjacent wetlands"

27

28   [4] The Sacketts take no position on remand of other portions of the Rule; their only interest is in the "adjacent wetlands" provisions of it.

1    provisions do not bear on the remainder of the Rule and this ease of severability makes partial

2    adjudication and partial remand especially feasible. *See* Exh. 1.

3        Waterkeeper alleged in its complaint that this definition of "adjacent wetlands" was an

4    abuse of discretion. *See* ECF No. ECF No. 93 at ¶¶ 10–11, 205, 208, 210, 215, 248–246, 280, 298–

5    301. The Sacketts argue that the exclusion of non-abutting wetlands from federal regulation is not

6    a matter of agency discretion but is instead compelled by the plain text of the Clean Water Act.[5]

7    *See* ECF No. 95 at 16–18. The Sacketts are prepared to proceed with briefing the merits of

8    Waterkeeper's claims against the "adjacent wetlands" provisions of the Rule, and Waterkeeper's

9    request for vacatur suggests that it wants the merits of this question adjudicated by this Court.

10   Because the portion of the Rule excluding non-abutting wetlands does not bear upon any other

11   provision of the Rule, this Court may exercise its discretion to adjudicate that aspect of

12   Waterkeeper's case while remanding the remainder of the Rule if the Court concludes that is

13   appropriate.

14   **II.    The Court *Should* Deny the Agencies' Motion for Remand as to the "Adjacent
         Wetlands" Provisions of the Rule**

15

16       Not only do the circumstances of this case *allow* the Court to deny remand of the Rule's

17   definition of "adjacent wetlands," they counsel strongly *in favor* of doing so. The Agencies have

18   consistently argued that the Rule's definition of "adjacent wetlands" is merely an exercise of agency

19   discretion. *See supra* note 2. The Agencies now seek to exercise this claimed discretion by

20   abandoning their defense of the Rule and changing it back to a broader definition of "adjacent

21   wetlands." *See* ECF Nos. 110-1 ¶¶ 17–18, 20 (Fox Decl.), 110-2 ¶¶ 17–18, 20 (Pinkham Decl.). By

22   moving for voluntary remand the Agencies implicitly ask this Court to prejudge the merits and

23   affirm their discretion to revisit the Rule. The Court should reject this effort, for four reasons.

24       *First*, the extent of the Agencies' discretion to redefine "adjacent wetlands" is a live

25   controversy on which the parties are entitled to a decision. The importance of a decision on this

26

---

27   [5] The Agencies have consistently defended the Rule as an exercise of their discretion and reject the
     Sacketts' argument that the adjacent wetlands definition in the Rule is legally compelled. *See supra*
28   note 2.

1    merits question is especially important now that the Agencies intend to inflate the definition of

2    "adjacent wetlands"—a move which the Sacketts will argue is illegal. If the Sacketts are correct,

3    the Agencies are not entitled to reconsider the definition of "adjacent wetlands" on remand because

4    they do not have the discretion to do so. As such, litigation over the extent to which the Clean Water

5    Act compelled the Agencies to exclude non-abutting wetlands from the Rule is far from

6    "unnecessary." *See* ECF No. 110 at 7, 16. Instead, adjudicating the merits of this question cuts to

7    the heart of what the Agencies are seeking.

8         Moreover, a decision on the merits of the Sacketts' defense of the Rule would properly

9    guide the Agencies in their stated intent to revise the definition of "adjacent wetlands." If the Court

10   agrees with the Sacketts that the *Rapanos* plurality controls and the exclusion of non-abutting

11   wetlands was compelled, then the Agencies lack any discretion to expand the definition of "adjacent

12   wetlands" on remand. On the other hand, if the Court agrees with Waterkeeper that the broader

13   "significant nexus" test is the controlling standard, *see* ECF No. 93 at ¶ 255, this will likewise

14   provide necessary guidance for the Agencies' exercise of discretion on remand. *See Rapanos* 547

15   U.S. at 759, 779–780 (Kennedy, J., concurring). Such guidance is especially important given the

16   Agencies' historic failure to craft a durable and legally sufficient definition of "adjacent wetlands."

17   *See supra* pp. 3–6. Indeed, at least one court has rejected a motion for voluntary remand where—

18   among other reasons—the agency's historic failures left the court unconvinced that the agency

19   would resolve issues identified by the litigation or conform its conduct to a statutory mandate on

20   remand. *See Assiniboine & Sioux Tribes of Fort Peck Indian Reservation*, 527 F. Supp. 2d at 136.

21        *Second*, in the situation where an agency believes its original decision was incorrect and its

22   remand request is predicated on "a change in agency policy or interpretation," the exercise of the

23   court's discretion will differ if the challenged agency action was statutorily compelled or forbidden

24   under *Chevron* Step One. *See SKF*, 254 F.3d at 1029–30. In such scenarios, although a reviewing

25   court still retains the discretion to grant remand, it may instead decide the statutory issue if the

26   circumstances warrant. *See id.* The Sacketts argue on the merits that the Agencies' exclusion of

27   non-abutting wetlands is legally compelled by a plain reading of the text of the Clean Water Act.

28   *See* ECF No. 95 at 16–18. Therefore, any analysis ends at *Chevron* Step One. *Id.* This Court should

therefore exercise its discretion to "decide the statutory issue" instead of remanding that portion of the Rule. *See SKF*, 254 F.3d at 1029–30; *Satterfield*, 569 F.3d at 952. *Cf. Nierotko,* 327 U.S. at 369 ("it is a 'judicial function,'" and not an agency function, to decide the final "limits of its statutory power").

*Third*, the Agencies' argument that remanding without deciding the merits would conserve judicial resources and benefit the parties is unavailing and should be rejected, at least as to the "adjacent wetlands" provisions of the Rule. *See* ECF No. 110 at 13–16. The Agencies argue in support of this contention that remand would permit the creation of a new administrative record and prevent needless litigation upon the current administrative record. *Id.* at 14. But if the Sacketts are correct that the definition of "adjacent wetlands" is compelled by the Act, then the contents of the Rule's current administrative record, or any new administrative record that might be created on remand, is irrelevant to the question of statutory construction the parties have asked this Court to address. Indeed, remanding for the Agencies to compile a new administrative record would be a futile endeavor. *Cf. Union Pacific R.R. Co. v. U.S. Dep't of Homeland Sec.*, 738 F.3d 885, 901 (8th Cir. 2013) (refusing to remand an agency decision, because the agency had plainly exceeded its statutory authority, and a court "simply will not remand '[w]here application of the correct legal standard could lead to only one conclusion.'" (quoting *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010))); *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1539 (D.C. Cir. 1992) (refusing to remand to the agency where only "one disposition is possible as a matter of law."). Here, there is nothing left for the Agencies to "crystalliz[e]." *See* ECF No. 110 at 14 (citing *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999)). The Sacketts' defense raises a purely legal question of statutory construction, and the Court should address that question before the Agencies waste any more time rewriting the Rule.

Illustrating the principle that a rulemaking record does not control questions of statutory construction, numerous courts have held that the *Chenery* doctrine—which provides that an agency may not defend an administrative decision on different grounds than those contained in the administrative record—is inapplicable where that decision was compelled by law. These cases hold that in performing its judicial function of resolving a pure question of statutory construction, a court

should not be constrained by the conclusions contained in the administrative record compiled by an agency. *See*, *e.g.*, *Koyo Seiko Co. v. United States*, 95 F.3d 1094, 1099–1102 (Fed. Cir. 1996) (affirming a proceeding on grounds other than those in the agency's record and finding *Chenery* inapplicable where the "the sole issue is one of statutory construction," the "plain language of the statute compels the conclusion," and the conclusion does not "implicate the exercise of agency discretion."); *Ark. AFL-CIO v. Fed. Commc'ns Comm'n.*, 11 F.3d 1430, 1440 (8th Cir. 1993) (plurality opinion) (determining courts may find additional bases "for a correct legal result" beyond those offered by the agency because "the Supreme Court clearly limited *Chenery* to situations in which the agency failed to make a necessary determination of fact or of policy."); *Railway Labor Execs.' Ass'n v. Interstate Commerce Comm'n*, 784 F.2d 959, 969 (9th Cir. 1986) (holding *Chenery* is inapplicable where "the issue in dispute is the interpretation of a federal statute."); *N.C. Comm'n of Indian Affairs v. U.S. Dep't of Labor,* 725 F.2d 238, 240 (4th Cir. 1984), *cert. denied,* 469 U.S. 828 (1984) (finding no "*Chenery* problem . . .  because the question of interpretation of a federal statute is not 'a determination or judgment which an administrative agency alone is authorized to make.'" (quoting *Securities and Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).[6]

    *Fourth*, affirming the Agencies' discretion and remanding the "adjacent wetlands" provisions of the Rule without deciding the merits would effectively deny the Sacketts their defense of the Rule. The Sacketts intervened to establish that the exclusion of non-abutting wetlands—

---

[6] Even if a new administrative record *would* help the Court's adjudication of the legality of the "adjacent wetlands" provisions (which it would not), the authority cited by the Agencies for the proposition that remand would promote "jurisprudential interests," is wholly inapplicable. *See* ECF No. 110 at 14. The cases cited by the Agencies each involve discussion of ripeness (and not the appropriateness of voluntary remand) where the agency had either already published a proposed rule to replace the challenged action, or where plaintiffs challenged an *incomplete* agency action. *See Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387–88 (D.C. Cir. 2012) (finding plaintiffs' claims unripe where a proposed rule that had already been published would "wholly eliminate" the grounds for one of plaintiffs' claims); *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999) (finding plaintiffs' challenge to an agency's NEPA compliance in issuing oil and gas leases unripe where agency had not yet issued the leases in question at the time of suit); *Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.,* 740 F.2d 21, 30 (D.C. Cir. 1984) (discussing ripeness and finality concerns in the context of a challenge to certain actions taken during ongoing administrative process). But in this case, Waterkeeper seeks adjudication of the merits of the Agencies' discretion to define "navigable waters" to exclude non-abutting wetlands in the currently effective Navigable Waters Protection Rule. This Court clearly has jurisdiction to reach the merits of those claims and remand for preparation of a new administrative record would not promote any "jurisprudential interest[]." *See* ECF No. 110 at 14.

1    including the one alleged to exist on their property—is compelled by law. *See* ECF No. 95 at 16–

2    18. Remanding the Rule for the Agencies to broaden the definition of "adjacent wetlands" permits

3    the Agencies to evade judicial review of the scope of their discretion merely by re-exercising the

4    discretion they claim to have in the first place. But the *scope* of that discretion is what this case is

5    fundamentally about. *Cf. Am. Petroleum Inst.*, 683 F.3d at 388 (stressing that an agency cannot

6    "stave off judicial review of a challenged rule simply by initiating a new proposed rulemaking that

7    would amend the rule in a significant way" because this would allow "a savvy agency" to

8    "perpetually dodge review."). And this is not merely an "abstract disagreement over administrative

9    polic[y]." *See* ECF No. 110 at 14. It has a real effect on the concrete interests the Sacketts have

10   sought to vindicate in this litigation—their right to use their private property without the Army's

11   permission. *See* ECF No. 95 at 12–15 (alleging significant concrete interests in the adjudication of

12   the legality of the "adjacent wetlands" provisions); ECF No. 95-1 ¶¶ 16–20 (Sackett Decl.) (alleging

13   significant personal harm should this litigation result in the Agencies returning to the illegally

14   overbroad "adjacent wetlands" definition in effect prior to the adoption of the Rule). Courts have

15   denied motions for voluntary remand where granting the motion would prejudicially allow an

16   agency to evade judicial review. *See Lutheran Church-Missouri Synod*, 141 F.3d at 349.[7]

17        The Court should deny the Agencies' motion as to the "adjacent wetlands" provisions of

18   the Rule, and instead permit this case to proceed to summary judgment briefing on that issue.

---

[7] Where agency action is compelled, remand to the agency is far from inevitable, so voluntary remand will significantly impair the judicial review rights of the parties. *Cf.* Joshua Revesz, *Voluntary Remands: A Critical Reassessment*, 70 Admin. L. Rev. 361, 403 (2018); *George Hyman Constr. Co.*, 963 F.2d at 1539. If the merits are adjudicated and the Rule is either vacated (as requested by Waterkeeper) or upheld as compelled (as requested by the Sacketts) it *will not* be remanded to the agency. However, the framework for voluntary remand—established in the context of the formal adjudication widely prevalent in prior eras of administrative law—generally approaches the problem as if remand is inevitable (as it generally is in the context of review of formal adjudication). *See* Revesz, *supra*, at 403. It therefore treats most voluntary agency remand requests as a mere "question of timing." *Id.* But in the context of judicial review of agency *rulemaking* "the choice between voluntary remand and litigating on the merits is not merely a question of timing" but is instead "a question of what remedy" private parties to the action will receive. *Id.* For this reason, in applying the voluntary remand doctrine, this Court "should be . . . attentive to private parties' [such as the Sacketts'] rightful position." *Id. See also*, Toni M. Fine, *Agency Requests for "Voluntary" Remand: A Proposal for the Development of Judicial Standards*, 28 Ariz. St. L.J. 1079, 1092–93, 1119 (1996) (framing the discussion in terms of the "[i]mportance [o]f [j]udicial [r]eview [f]unction" and noting that "the rights of intervenors warrant special attention in th[e] context" of an opposed motion for voluntary remand).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**III.    This Court Should Reject Waterkeeper's Request for Remand With Vacatur and Instead Treat it as a Request for Adjudication on the Merits**

Finally, this Court should reject Waterkeeper's request for pre-merits vacatur. *See* ECF No. 113. Given the way Waterkeeper couches its request, the Court should treat it functionally as a request to adjudicate the merits of Waterkeeper's claims.

Any request for remand with vacatur equates to asking this Court to grant complete relief without first adjudicating the merits. *See id.* Courts have rejected similar requests on the grounds that doing so circumvents the notice and comment requirements of the APA and affords relief without due consideration of the merits. *See Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009) ("granting vacatur here would allow the Federal defendants to do what they cannot do under the APA, repeal a rule without public notice and comment, without judicial consideration of the merits."); *Maine v. Wheeler*, No. 1:14-cv-00264-JDL, 2018 WL 6304402 at *1 (D. Me. Dec. 3, 2018) (same).

Waterkeeper argues that "the default rule is that vacatur accompanies remand." *See* ECF No. 113 at 9–11. But each authority cited for this rule involved vacatur *after* an adjudication of the merits. *See All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121–22 (9th Cir. 2018) (holding remand with vacatur was the appropriate remedy after the district court determined on summary judgment that the United States Forest Service had violated the National Forest Management Act); *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (finding remand with vacatur appropriate after determining on the merits that EPA's registration of several pesticides was not supported by substantial evidence and was therefore illegal); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) (reversing the district court's summary judgment determination and determining on the merits that the challenged agency action was unlawful); *Ctr. for Envtl. Health v. Vilsack*, No. 15-CV-01690-JSC, 2016 WL 3383954, at *13 (N.D. Cal. June 20, 2016) (finding remand with vacatur appropriate after determining on the merits that the challenged agency action was unlawful); *Allina Health Servs. v. Sebelius*, 746 F.3d 1102,

1   1110 (D.C. Cir. 2014) (same).[8]

2         The cases cited by Waterkeeper in support of vacatur *prior* to an adjudication on the merits

3   all involve situations where no live dispute on the merits remained between the parties. *See ASSE*

4   *Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1064–65 (C.D. Cal. 2016) (vacating and remanding after

5   the agency agreed to revisit its decision in light of a Ninth Circuit opinion determining that the

6   agency had "failed to provide [the plaintiffs] adequate procedural protections consistent with the

7   Fifth Amendment's Due Process Clause"); *Ctr. for Native Ecosystems v. Salazar*, 795 F. Supp. 2d

8   1236, 1239 (D. Colo. 2011) (vacating and remanding after the Solicitor of the United States

9   Department of Interior withdrew the legal opinion underlying the challenged agency action and the

10  agency asked for remand in light of two federal court orders holding that opinion was flawed);

11  Order, *Farmworker Ass'n of Fla. v. EPA*, No. 21-1079 (D.C. Cir. June 7, 2021) (vacating and

12  remanding after the agency acknowledged the illegality of its actions); *Bldg. Indus. Legal Def.*

13  *Found v. Norton*, 231 F. Supp. 2d 100, 104–05 (D.D.C. 2002) (finding that the dispute between the

14  parties no longer existed because all agreed that the challenged agency action was based on a flawed

15  interpretation).

16        However, a live dispute over the legality of the Navigable Waters Protection Rule's

17  "adjacent wetlands" provisions remains in this case. Waterkeeper alleges that the Agencies abused

18  their discretion in excluding previously regulated non-abutting wetlands from federal authority. *See*

19  ECF No. 93 at ¶¶ 10–11, 205, 208, 210, 215, 248–246, 280, 298–301. The Agencies ask this Court

20  to affirm that the exclusion of previously regulated non-abutting wetlands was an allowable

21  exercise of agency discretion. *See supra* p. 11.  And the Sacketts argue that the exclusion of non-

22  abutting wetlands was legally compelled, such that the Agency had no discretion. *See* ECF No. 95

23  at 16–18. Indeed, Waterkeeper argues throughout its partial opposition for a return to the same

24  definition of "adjacent wetlands" under which EPA asserted regulatory authority over the Sacketts'

---

[8]  Waterkeeper's textual argument that the language of 5 U.S.C. § 706(2)(A) requires vacatur similarly ignores the necessity of an adjudication on the merits prior to remedy. *See* 5 U.S.C. § 706(2)(A) ("the reviewing court shall . . . *hold unlawful* and set aside agency action, findings, and conclusions found to be" in violation of the APA) (emphasis added); *Hold*, Black's Law Dictionary (4th ed. 1951) (defining "hold" as "[t]o *adjudge* or decide, spoken of a court, particularly to declare the conclusion of law reached by the court as to the legal effect of the facts disclosed.") (emphasis added). The principle is simple and inexorable: merits first, then remedy.

1  property in 2007. *See* ECF No. 113 at 7, 15, 17–18, 25. The Sacketts intervened for the specific

2  purpose of arguing the Agencies do not have the discretion to redefine "adjacent wetlands," and to

3  prevent a return to the illegally overboard definition in place in 2007. *See* ECF No. 95-1 at ¶¶ 17–

4  20 (Declaration of Chantell Sackett). This dispute remains live. To vacate the Rule in response to

5  Waterkeeper's request would therefore grant complete relief to Waterkeeper and render a complete

6  loss for the Sacketts.

7       As such, Waterkeeper's request should be taken for what it is in all but name—a request to

8  adjudicate the merits of its claims. The Court can and should adjudicate the merits of Waterkeeper's

9  claims—at least as they pertain to the Rule's definition of "adjacent wetlands"— based on proper

10  briefing on that question and then enter an appropriate remedy at that time. But it should not vacate

11  the Rule and provide Waterkeeper with complete relief without first considering the merits of

12  Waterkeeper's claims.

13  **CONCLUSION**

14       The Agencies' motion for voluntary remand without vacatur should be denied as to the

15  severable "adjacent wetlands" provisions of the Rule, and Waterkeeper's request that the Rule be

16  vacated should be denied in the event the Court grants remand.

17       DATED: July 6, 2021.

18                  Respectfully submitted,

19                  ANTHONY L. FRANÇOIS

20                  CHARLES T. YATES

21                  By_____/s/ Anthony L. François_____

22                       ANTHONY L. FRANÇOIS

23                  *Attorneys for Proposed Defendant-Intervenors*

24

25

26

27

28